JOHN DAVIDSON ET AL. v. REUBEN RYLE ET AL.

No. 2010. Decided January 26, March 9, 1910.

1.—Unrecorded Deed—Innocent Purchaser—Payment—Recital in Deed—Evidence.

One asserting title as an innocent purchaser, as against a prior unrecorded deed, must prove payment of a valuable consideration and can not establish such fact by the recital of same in his deed, but such payment may be proved by circumstances, and the recital is a matter to be considered in connection with them. (Pp. 215, 216).

2.—Innocent Purchaser—Notice and Payment—Case Stated.

A league of land was granted to C. as a colonist in Zavalla's Colony on May 27, 1835; C. by an act of sale before the Judge of Nacogdoches, conveyed to L. on September. 15, 1835; L., by act of sale in New Orleans, La., which recited that he was agent of C., "duly appointed by procuration in the possession of the purchaser," but which by its terms conveyed L.'s interest, conveyed it to B., but the instrument was not recorded until July 8, 1847. On January 9, 1846. C. conveyed the same land by deed to L., on a recited consideration of cash paid. On the issue of title passing to T., as a purchaser for value and in good faith, it is held that though the recital of payment of the purchase money in the deed to T. was insufficient to prove that fact, such payment, as well as absence of notice of the unrecorded deed, could be shown by circumstances, of which the recital of payment was one to be considered. And the evidence here considered, viz.: the recital indicating the conveyance by C. to L. to be a mere power of attorney; the fact that grantor, grantee and witnesses to the deed from C. to T. were dead; that C. might have made the second sale in good faith, since no deed in pursuance of his power of attorney was on record after more than ten years; that the relations of C., a small Mexican farmer, and T., a Frenchman recently come to Texas, rendered a sale except for valuable consideration or a recital of payment where none was made, improbable; that the

government dues on the grant were paid after T.'s purchase; that T. did not sell the land, but he and his estate and heirs rendered it for taxes down to their sale of it in 1892, and employed agents to look after it, were sufficient to authorize the submission to a jury of the question of purchase by T. in good faith, without notice, and for a valuable consideration, and the appellate court was not warranted, on reversing a recovery in favor of those holding under the conveyance to T., in rendering judgment for those holding under the older conveyance from C. (Pp. 216–218).

### 3.—Evidence—Land Office Archive—Indorsement of Payment.

The original grant to a Mexican colonist being an archive of the Land Office, and the Commissioner being authorized to collect the unpaid government dues thereon, a certified copy of such grant, and of an indorsement thereon showing their payment was admissible in evidence to establish such payment and its date. (P. 218).

### 4.—Evidence—Honesty.

Testimony that a certain person was honest was a mere opinion of the witness and inadmissible. (P. 218).

### 5.—Evidence—Relevancy.

On the issue of payment of purchase money of land, in support of a recital of cash payment in the deed, evidence that the purchaser, at a later time, borrowed money to pay for land was irrelevant. (P. 218).

### 6.—Evidence—Conveyance—Description—Date of Grant.

Where a conveyance of land correctly described it by the name of the original grantee, but with an error of one day in the date of the grant, the variance was immaterial and not ground for excluding the instrument. (P. 218).

Error to the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

Action by Reuben Ryle and others against John Davidson and others, for the recovery of land. There was a verdict and judgment for defendants and plaintiffs appealed. The Appellate Court reversed the judgment and, because of the insufficiency of the evidence to show that the junior title, under which defendants held, was that of an innocent purchaser for value, as against the older unrecorded conveyance, under which it was claimed by plaintiffs, rendered judgment for appellants. Appellees then obtained writ of error.

Certified questions from the Court of Civil Appeals in this case were answered by the Supreme Court in Ryle v. Davidson, 102 Texas, 227.

*Greers & Nall, Greer, Minor & Miller, Campbell & McMeans,* and *A. D. Lipscomb,* for plaintiffs in error.—Where the description in a conveyance of a league of land in a colony in which there are many league grants, contains only two elements to distinguish it from other leagues in the same colony, to wit, the name of the grantee and the date of the grant, the description should not be given application to a league granted on a different date without actual proof, or at least proof authorizing the presumption, that there is not a league grant of the date named in the conveyance. Harkness v. Divine, 73 Texas, 628.

The power of a purported attorney in fact to convey land will not be presumed from mere recitals of his instrument, however ancient;

long exercise of dominion under it being necessary to authorize a presumption in support of it. Baldwin v. Goldfrank, 88 Texas, 258.

While the authority of one assuming to act as agent in the execution of an instrument shown to be ancient, that is, more than thirty years of age, may be presumed when supported by long assertion of ownership under it, on the other hand the presumption would be against the agency where there has been long acquiescence by the persons claiming under such instrument in the acts of ownership of those claiming adversely thereto. Baldwin v. Goldfrank, 88 Texas, 257.

Purchase in good faith for valuable consideration by Thouvenin in 1846 is proven as clearly and directly as such fact could be proven after such great lapse of time, and there being nothing to rebut it, it was the duty of the trial court to charge peremptorily in favor of defendants. Fletcher v. Fuller, 120 U. S., 534; Hensel v. Kegans, 79 Texas, 359; Auerback v. Wiley, 84 Texas, 620; Cox v. Cooke, 59 Texas, 524; Smith v. Gillum, 80 Texas, 127; Taylor v. Watkins, 26 Texas, 696; Greenleaf on Ev., sec. 45a. Circumstances that in connection with others, have been sanctioned by the cases as authorizing presumption of title, are as follows: Recitals of ancient instruments, Deery v. Crary, 5 Wall., 805; Davis v. Gaines, 104 U. S., 398; Fulkerson v. Holmes, 117 U. S., 381; Carver v. Jack, 4 Peters, 83; Smith v. Swan, 2 Texas Civ. App., 563; Sydnor v. Texas S. & R. E. Inv. Assn., 42 Texas Civ. App., 138. The fact that the junior grantee paid the government dues on the land, Johnson v. Newman, 43 Texas; Manchaca v. Field, 62 Texas, 148. Proof of possession is not indispensable. John v. Timmons, 50 Texas, 533; Harrison v. McMurray, 71 Texas, 128.

In support of ancient and continued exercise of dominion, in the respects appropriate to the land in controversy, acquiesced in by the holders of the adverse claim whose own conduct has been long inconsistent with a bona fide claim of title, the general conclusion of title may be made by a jury, or they can infer the ancient existence of any fact, act or instrument consistent with such ancient exercise of dominion, and needed to connect it with the sovereignty, and the presumption is a great deal more readily entertained when the fact was not required to be in the shape of a written instrument, and its existence is declared or indicated by the recitals of instruments in the opposing chain of title. Where a presumption of title is authorized, it is immaterial what form the inference drawn by the jury assumes. It may be "some way or other," Taylor v. Watkins, 26 Texas, *98; it is immaterial that the precise inference is not the true one, Fletcher v. Fuller, 120 U. S., 534; a trust may be inferred, Sydnor v. Texas S. & R. E. Inv. Assn., 42 Texas Civ. App., 138; a parol sale under the Mexican law prior to 1840, Herndon v. Burnett, 50 S. W., 581. The acts of ownership essential to support the presumption are such as are usual in respect to like lands. Baldwin v. Goldfrank, 88 Texas, 257. And it is immaterial that possession has not been had as to the particular parcel in controversy, others having been held under the same title. Smith v. Swan, 2 Texas Civ. App., 563; Simmons v. Hewett, 87 S. W., 189; Tex. Mex. Ry. v. Uribe, 88 Texas, 386; Johnson v. Shaw, 41 Texas, 432.

Thus the fact that an inference is of ancient .matter resting in parol, the direct evidence of which died with the parties, is a material consideration, Herndon v. Burnett, 50 S. W., 581, 21 Texas Civ. App., 25; Smith v. Swan, 2 Texas Civ. App., 563; recitals of far inferior weight to those in Leplicher's deed, Sydnor case; Baylor v. Tilleback, 49 S. W., 732; McDow v. Rabb, 56 Texas, 135; the dealings of defendants with the ancient title papers, such as their registration of the original grant and payment of the government dues, Davidson v. Wallingford, 88 Texas, 624; Stafford v. Kreinhop, 63 S. W., 168; Daily v. Starr, 26 Texas, 565.

The recital of an ancient junior deed, all the parties to the transaction being dead, may be considered and should be submitted to a jury along with conduct of the parties on the issue of innocent purchase.    Holland v. Nance, 102 Texas, 177; Deery v. Cray, 5 Wall., 795; Fulkerson v. Holmes, 117 U. S., 398.

*J. J. Ofiel* and *Robertson & Whitaker,* for defendants in error.— Where the plaintiffs and defendants, on an issue of title, claim from a common source, as in this case, and plaintiffs have the older legal title, and there is not sufficient evidence to justify the court in submitting as an issue, defendants' claim of innocent purchaser, limitations, or other defenses plead, or relied upon, it was the duty of the District Court to instruct a verdict for the plaintiffs, and in such case, this court will reverse and render the judgment in favor of plaintiffs.    This court may reverse and render in jury trials. Henne & Meyer v. Moultrie, 97 Texas, 216; Montgomery v. Carlton, 56 Texas, 361.    Duty of court to instruct a verdict, Edwards v. Barwise, 69 Texas, 84.

A mistake of one day in the date of the original grant in the reference to it in the above act of sale, the grant being otherwise sufficiently identified, was immaterial, and the instrument passed the title to Leplicher as a matter of law.    Cook v. Dennis, 61 Texas, 249, and authorities cited; First Nat. Bank v. Hicks, 24 Texas Civ. App., 69; Bratton v. Adams, 7 Texas Civ. App., 61; Mardes v. Meyers, 8 Texas Civ. App., 542; 2 Green's Dig., cc. 4044-46, S. 20-21.

The burden of proof to show that Arnold Throuvenin was an innocent purchaser of the land from Chireno was on the defendants, they holding the junior title, and there being no evidence to submit this issue to the jury, the plaintiffs holding the senior title should prevail. Rogers v. Pettus, 80 Texas, 425; Turner v. Cochran, 94 Texas, 484; Watkins v. Edwards, 23 Texas, 448, and authorities cited in Rose's Notes of this case; Lindsay v. Freeman, 83 Texas, 267.

It is error to permit witnesses to testify to their individual opinions as to the honesty of a party to a suit like this or to his financial condition, over objections, and was also error to permit one of said witnesses, to wit, Emile Derise, to testify that her father loaned money to Arnold Throuvenin several times to buy lands with, without locating the time or amounts or in any way connecting such transaction with the purchase of the land in controversy by the said Throuvenin from Chireno.    Rankin v. Busby, 25 S. W., 678.

A receipt for government dues made in the name of Manuel Chireno,

the original grantee of the league of land in controversy, dated May 6, 1846, certified by the Land Commissioner to be attached to the original grant of the land in his office is not an archive of said office and its execution was not proved, and such instrument does not come from the proper custody and is not a matter that can be introduced in evidence under the certificate of the Land Commissioner. Rogers v. Pettus, 80 Texas, 425; Holt v. Maverick, 24 S. W., 432.

MR. JUSTICE BROWN delivered the opinion of the court.

This suit involved the title to the west half of a league and labor of land situated in Jefferson County, Texas, the grant to which was issued by Jorge Antonio Nixon, Special Commissioner for the Mexican Government, on the 27th day of May, 1835, to Manuel Chireno as a colonist in Zavalla's colony.

Plaintiffs and defendants all claim title under Chireno. The title to the plaintiffs below was deraigned from the grantee through these conveyances:

(1) An act of sale before Louis Ruiz, Judge of the first instance of the town of Nacogdoches, Texas, on the 15th day of September, 1839 (1835) whereby Manuel Chireno conveyed the entire league to Juan Leplicher for a recited cash consideration of $100. The instrument was in the Spanish language and upon trial a translation was introduced in evidence. In that act of sale the description of the land was the same as given in the original grant, except that it stated that the grant was made on the 28th day of May, 1835, whereas the original grant was dated the 27th day of May, 1835. The act of sale contains this language: "It being a condition expressly agreed upon, that the above mentioned purchaser remains obligated to make the payments to the government for the league of land above mentioned, and to comply also with the rest of the requisites to which it is subject according to law."

(2) By an act of sale made and entered into in the city of New Orleans, State of Louisiana, on the 2d day of May, 1839, Juan Leplicher conveyed, the entire league granted to Chireno to Daniel Berlin for a cash consideration of $442.80, the receipt of which was acknowledged. The description in this act of sale was by metes and bounds as given in the original grant. It was not recorded in Jefferson County, Texas, until July 8, 1847. The act of sale contained this language: "Personally came and appeared Juan Leplicher of this city, agent of Manuel Chireno, duly appointed by procuration in the possession of the purchaser hereinafter named." Leplicher, however, by the terms of the instrument, conveyed all of his interest in the land to Daniel Berlin of the Republic of Texas.

(3) On September 1, 1852, Daniel Berlin, by deed duly executed in the State of New York, conveyed 1628 acres of the land to John Ryle in the form of a square in the southwest corner of Manuel Chireno's league, which deed was placed of record in Jefferson County, Texas, on the 19th day of February, 1854. Ryle having died, his heirs were plaintiffs in the suit and the heirship was proved and undisputed.

(4)   On December 22, 1854, Daniel Berlin by deed conveyed to Jacob Berlin the league, less 1628 acres sold to John Ryle.

(5)   On September 26, 1853, in the State of New York, Jacob Berlin and wife conveyed 2000 acres out of the northwest corner of the league of land to W. H. Perrine, which deed was recorded in Jefferson County on the 26th day of December, 1854.   Perrine was a plaintiff in this suit.

The defendants claimed title under the following conveyances:

(1)   A deed executed by Manuel Chireno on the 9th day of January, 1846, in Nacogdoches County to Arnold Thouvenin for a recited consideration of $500, conveying to said Thouvenin the entire Chireno league.   The payment of the consideration was acknowledged in the deed.   This deed was recorded in Jefferson County on the 2d day of June, 1846.   The deed was witnessed by Chas. S. Taylor and W. W. Barrett and was proved up by the latter before A. W. Wingfield, Chief Justice of Nacogdoches County.   In the month of September, 1846, Arnold Thouvenin conveyed the east half of the league of land to two citizens of France by the name of Bessard.

(2)   The defendants introduced a copy from the General Land Office of the original grant to Chireno and a copy of a receipt attached to the original grant in the General Land Office, whereby it appeared that on the 6th day of May, 1846, the government dues in the sum of $56 had been paid but did not give the name of the person making the payment.   In the same record book of Jefferson County in which the deed from Chireno to Thouvenin was recorded, on the next page, a certified copy of the original grant to Chireno was of record.   The plaintiffs objected to the introduction of the copy of the receipt:   (1st) Because it does not appear to whom the receipt was given.   (2d.) Because it is a certified copy, not the original.   (3d) Because the loss of the original is not shown.   (4th) Because it was not a record authorized to be kept in that office.

(3)   The death of Arnold Thouvenin was proved and that his heirs conveyed the land to the defendants Brooks and Pope.   It is unnecessary to recite other muniments of title for they are undisputed and have the effect to place the title of A. Thouvenin to the west half of the league in the defendants.

It was proved by the defendants below that Manuel Chireno, A. W. Wingfield, W. W. Barrett and Chas. S. Taylor all died many years before this suit was begun.   Arnold Thouvenin was a native of France, his only brother was in Texas, and Arnold Thouvenin left France for the purpose of joining his brother in America.   The date of his arrival in Texas is not shown by the evidence.   One witness testified that it was in 1848 or 1849, but this is evidently a mistake, as the conveyance to him was dated prior to that time.   It was proved by a witness who, at the time of giving her deposition, lived in France, that she lived with her father in the city of New Orleans about 1848 or 1849 and up to 1859, that A. Thouvenin went to Texas to buy land and that his brother then lived in Texas.   That Thouvenin frequently visited her father in New Orleans and she had heard him speak often of buying land in Texas and knew that her father had loaned him money during that time with which to pay for the land

which he purchased in Texas. The evidence shows that Thouvenin returned to France in the year 1859, and died there in 1863. M. Derise, Mayor of the city of Mirecourt, France, testified that he knew Thouvenin well before he came to Texas and after his return, and that Thouvenin was in easy circumstances and an honest man; his wife, who was the witness that knew him in New Orleans, testified to the same fact. Derise also testified that Thouvenin showed to witness maps and plats of land which he had purchased in Texas. A. Thouvenin did not sell any part of the west half of the league and his heirs sold none of it until the year 1892. The land was rendered for taxes in the name of A. Thouvenin from and including the year 1849 until the year 1865; and from and including the year 1866 until 1877 it was rendered in name of the heirs of Thouvenin; and from 1877 to 1892, when it was sold by the heirs, it was rendered in the name of the estate of Thouvenin.

Starr & Company, and some other agents at other times, rendered the land after Thouvenin's death and had oversight and control of it. In about the year 187.. the agents who had control of the land, Starr & Company, employed a man who lived on land adjoining that claimed by Thouvenin to take the oversight of it and to protect it from trespassers and to prevent them from cutting timber and carrying it away. That man had a very small portion of the land in his field by mistake and held it, not as his own, but as the property of Thouvenin's heirs until it was sold by them. The west half of the land was not occupied by any person until it was sold to the present defendants, Williams, when a house was built upon it for them and it was rented occasionally as their property, but not occupied continuously.

The Bessards, to whom Thouvenin sold, had their deed recorded in Jefferson County on the .... day of ......, 1846. About 1884, the claimants under the Bessards' title erected improvements upon the property, the east half of the league, and occupied it continuously until it was subsequently sold and the purchasers have occupied it since their purchase. This land is not in controversy and the facts are stated in connection with the contention made by the attorneys for plaintiffs in error that the possession and occupancy of the east half of the land should be considered in determining the issue of nonclaim. We are of opinion that the evidence is not sufficient to present the issue of abandonment by the plaintiffs of their claim to the land, therefore, the possession of the east half by the vendees of Thouvenin did not affect the right of plaintiffs to the west half of the league.

For convenience the parties will be designated as plaintiffs and defendants, as in the trial court.

In Watkins v. Edwards, 23 Texas, 448, the court said: "To entitle a subsequent vendee to have a prior unregistered conveyance, postponed to his subsequent conveyance, it must appear: 1st. That he was a purchaser, *bona fide;* 2d. That he purchased without notice, actual or constructive, of the title of the prior vendee. It must appear, that the purchase money was *bona fide* and truly paid; a recital of that fact in the deed is not sufficient. It must be proved

by evidence, independently of the recitals in the deed." The extract expresses the established rule in Texas, and it is unnecessary to add authorities. We note that the recital in the deed that the purchase money was paid "is not sufficient" to prove that fact, and that "it must be proved independently of the recital." The character of the proof, however, is not limited to direct evidence, but each necessary fact may be proved by circumstantial evidence. The recital in the deed may become a potent circumstance in connection with other circumstances.

In Rogers v. Pettus, 80 Texas, 428, the court, by Judge Stayton, laid down as the rule for judging of such matters that the facts must be "consistent with the conduct of ordinary men, who must be supposed to act with reference to their own interest." That is a sound test.

Did Thouvenin buy the land in good faith and without actual notice of the sale to Leplicher or Berlin? In order to decide that question the good or bad faith of Chireno may well be considered. The recitals in the act of sale by Leplicher to Berlin are binding on plaintiffs because they claim through it. In that act of sale Leplicher declares that he conveys as agent for Chireno empowered by "procuration" which was delivered to Berlin. This recital would authorize the jury to believe that the title remained in Chireno until the sale was made to Berlin, and that the act of sale from the former to Leplicher was in fact intended to be a power of attorney. Leplicher lived in New Orleans, Louisiana, and the sale to Berlin occurred there. More than ten years had passed since the power to sell was given, but no conveyance was on record in Jefferson County. In the act of sale to Leplicher it was expressed as a condition that he should pay the government dues, but the dues had not been paid when Thouvenin bought. A jury might conclude from these facts that Chireno believed the land had not been sold and that the title was still in him and that he sold the land to Thouvenin in good faith for the purpose of converting it into money. Such action would be "consistent with the conduct of ordinary men, who must be supposed to act with reference to their own interest." There being no one in actual possession of the land, no record of an adverse title, and the sale to Berlin having been made at New Orleans, Louisiana, there was no source from which Thouvenin could acquire information of the unrecorded instrument. Both parties and the witnesses to the deed being dead, it would be impossible to prove a want of actual notice more definitely.

If Chireno believed he had the title and sold in good faith to Thouvenin, the latter may be presumed to have believed that he was getting a good title from the original grantee of the government. It is suggested that the special warranty indicated a doubt of the title. The character of the warranty is a fact which the jury may consider on the question of good faith. White v. Frank, 91 Texas, 70. It is not conclusive, however, and taking the most favorable view of that fact for defendants, a jury might believe that it did not indicate want of confidence by Thouvenin in this title, because the deed was made by the person to whom the government granted the land, and

the special warranty embraced any previous sale by Chireno. The only character of defect not included in the warranty would be the invalidity of the title or a previous grant by the government, which were improbable. There being no circumstances calculated to excite suspicion in the mind of the purchaser, such facts would authorize a jury to find that Thouvenin bought the land in good faith.

Did Thouvenin pay the purchase money? This was a transaction between a Mexican, farming in a small way, and a Frenchman, who had recently come to Texas to buy land. There is no evidence that the men were previously acquainted. They were not related to each other by blood, marriage or friendship, and there is no apparent reason why the Mexican should have made a gift of the land to the Frenchman. Ordinary men do not usually do so. Neither is there a circumstance to indicate that Chireno was indebted to Thouvenin, in payment of which debt the conveyance might have been made. No circumstance in the case indicates that to defraud his creditors Chireno conveyed the land to Thouvenin. This eliminates every probable purpose on the part of Chireno in the making of the conveyance but one, that is, to convert the land into money by a bona fide sale for a valuable consideration, which is consistent with "the conduct of an ordinary man, who must be supposed to have, acted with reference to his own interests." While it is the law that the recital in the deed of payment of the consideration is not sufficient alone to prove the fact of payment, such recital may be a circumstance to be considered in connection with other circumstances in determining the issue of payment. Would Chireno, an ordinary man, acting with a view to his own interests, have conveyed the land to a stranger on time payment, reciting in the deed that the money was paid? A conclusion that he would not would be sustained by the evidence in this case and would be consistent with the conduct of ordinary men. Assuming that Thouvenin acted in good faith in buying, having no actual notice of the previous conveyance, the further facts that the government dues were paid in a short time thereafter, and that a copy of the original grant was procured from the General Land Office and recorded in connection with Chireno's deed to Thouvenin are consistent with the conduct of a purchaser who had purchased in good faith and paid the purchase money, a conclusion that Thouvenin did those things would be sustained by the evidence, and would be consistent with the conduct of a man who believed he had a good title. Consistent with such belief are the facts that Thouvenin did not sell the land, that excepting a few years the land was rendered for taxation, including the year 1849, to the year 1892, in the name of A. Thouvenin, while he lived, and after his death it was rendered in the name of his estate, together with the employment of agents to render the land and pay taxes, to look after and protect it from trespassers, constitute conduct consistent with the action of an ordinary man who was looking to his own interest and who, believing he had a good title, had paid for the land. The lapse of more than half a century from the making of the deed to Thouvenin before any adverse claim was asserted to the land, gives strength and cogency

to the recited circumstances and would support a finding that the recital of the payment of the consideration in the deed was true.

The evidence being sufficient to sustain a finding by the jury that Thouvenin bought the land in good faith, without actual notice of the sale to Leplicher or Berlin, and that he paid the purchase money, the Court of Civil Appeals erred in rendering judgment for the plaintiffs, for which the judgment of that court will be reversed and this cause remanded. In view of another trial we will pass upon some assignments which present questions that may arise again.

Defendants offered as evidence a certified copy of an endorsement made on the original grant on file in the General Land Office and signed by the chief clerk thereof, showing that the dues to the government had been paid on the Chireno grant. Plaintiffs objected because it was a private paper, not properly in the land office. The grant was an archive of that office and the Commissioner was authorized to collect the government dues. (1 Pasch. Dig. Laws, arts. 69, 70, 71.) The endorsement that the Commissioner received payment was a record of the office and a certified copy of it was admissible in evidence.

The defendants offered the deposition of Mrs. De Ries to the effect that Thouvenin was an honest man, that he was in easy circumstances and that he borrowed money from her father to pay for land in Texas. The evidence that Thouvenin was honest was an opinion of the witness and not admissible. The other statements concerned matters which occurred after the purchase from Chireno and could not bear upon any issue in the case.

The defendants objected to the introduction of the act of sale from Chireno to Leplicher because it did not contain a description by which the land could be identified. The ground of the objection was the variance in date between that given in the original grant, "May 27, 1835," and the statement in the act of sale to Leplicher that the land conveyed was that granted to Chireno on the "28th day of May, 1835." The only variance being in the day of the month. The objection was properly overruled. There were other questions raised during the trial and presented here but will not probably arise again.

That we may not be misunderstood we state that we have not expressed our conclusion as to the effect to be given to the evidence, but have stated what we believe to be conclusions which the law would permit a jury to deduce from the facts.

Judgment of the Court of Civil Appeals reversed and cause remanded to the District Court.

### ON MOTION FOR REHEARING.

It was not intended to hold that the possession of the east half of the league by the vendees of Thouvenin might not be admissible as a circumstance to prove abandonment of their claim to the land by those who claimed under Leplicher. As the case was presented to us the fact of possession did not affect our conclusion. It is an open question for another trial.

Learned counsel for defendants in error present a strong argument upon the facts which might convince a jury, but the law requires this court, in deciding the issue presented, to take the view of the evidence most favorable to the finding of the jury.

Both motions for rehearing are overruled.

*Judgment of Court of Civil Appeals rendering judgment for appellants reversed and cause remanded to District Court.*