**MATTHEWS et al. v. HOUSTON OIL CO. OF TEXAS et al. (No. 1599.)**

Court of Civil Appeals of Texas. Beaumont. Oct. 18, 1927.

1. **Wills** ⊙⇒433—Recital in old will of plaintiffs' ancestor as to realty owned by testator, not mentioning realty involved in suit, held to sustain defendant's chain of title not traced to testator.

Recital in will of plaintiffs' ancestor, who died in 1871 that his estate consisted of certain real and personal property, not mentioning certain realty previously owned by him involved

in suit for interest therein and for partition by persons claiming from testator as heirs, if not binding on plaintiffs as matter of law, sustained and fully accounted for another's chain of title not traced to testator under which defendants claimed.

2. **Vendor and purchaser** ⊙⇒231(8)—Record of deed destroyed for 16 years without being re-registered ceased to operate as notice (8 Gammel's Laws, pp. 102, 881, 1335).

Under 8 Gammel's Laws, pp. 102, 881, 1335, record of deed destroyed for 16 years ceased to operate as notice, where deed had not been re-registered.

3. **Evidence** ⊙⇒353(5)—Recital of consideration in deed in defendant's chain of title held admissible to show grantee's bona fides.

In action to recover interest in realty and for partition thereof, recital in deed in defendant's chain of title that grantee therein paid specified sum for the land *held* admissible as tending to show he was an innocent purchaser of the land in good faith.

4. **Trespass to try title** ⊙⇒38(2)—Mere presumption that common source had title yields to facts showing such source did not have title when he died, as respects persons claiming as his heirs.

In action to recover and partition an interest in realty as heirs of common source, mere presumption that common source had title yielded to facts affirmatively and conclusively showing that such source did not have title when he died.

5. **Adverse possession** ⊙⇒52—One may purchase his peace without recognizing validity of claim or title acquired.

One may purchase his peace without recognizing the validity of the claim or title acquired.

6. **Adverse possession** ⊙⇒106(4)—Adverse possession for over 8 years under recorded deeds and payment of taxes gave title.

Adverse possession of land for over 8 years under recorded deeds purporting to convey entire tract, and payment of taxes thereon, gave title under 5-year statute of limitations.

7. **Vendor and purchaser** ⊙⇒233—Junior grantee took title as against senior unrecorded deed, in absence of proof of bona fides, notwithstanding senior deed was recorded before junior deed (1 Gammel's Laws, p. 1216, § 40).

Under Act Dec. 20, 1836, § 40 (1 Gammel's Laws, p. 1216; Hartley's Dig. art. 2757), junior grantee of land took title as against senior unrecorded deed executed in 1837, where there was no proof on the issue of junior grantee's bona fides, and it was immaterial that senior deed was recorded before recording of junior deed.

Appeal from District Court, Hardin County; Geo. C. O'Brien, Judge.

Suit by Birdie Palmer Matthews and others against the Houston Oil Company of

Texas and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Holland & Cousins, of Beaumont, for appellants.

Kennerly, Williams, Lee, Hill & Sears, of Houston, for appellees.

O'QUINN, J. Appellants brought suit against appellees to recover and partition an undivided one-third interest in the John A. Vickers league of land in Hardin county, conceding that appellees were the owners of the other two-thirds. They also sought to recover damages for certain timber cut and removed from said land by appellees.

Appellees answered, asserting title to the land from Vickers, Jr., to that asserted by appellants, and also title not connected with the sovereignty, and title from joint heirs with appellants. They also defended as innocent purchasers for value and pleaded the 3, 5, and 10 year statutes of limitation, and the 2 and 4 year statutes of limitation against the claim for damages for timber cut. By appropriate cross-action, appellees sought recovery of the land, pleading in the cross-action the 3, 5, and 10 year statutes of limitation.

The trial was before the court without a jury, and resulted in a judgment against appellants and in favor of appellees for all of the land involved and the damages sought.

In compliance with the request of appellants, the trial court filed findings of fact and conclusions of law. There is also a full statement of facts in the record. The findings of fact and conclusions of law are:

"Findings of Fact.

"A. I find as facts the matters agreed upon by the parties themselves as shown by paragraphs 1 to 7, inclusive, of their written agreement offered in evidence on the trial, which are as follows:

"I. Either party on the trial hereof may offer in evidence and read from the deed and/or other records of Hardin county, from original instruments, from certified copies, and/or from duly prepared abstracts of title; affidavits of loss and/or inability to procure originals, and the filing and notice of filing of title papers are waived by both parties.

"II. William Palmer was married twice. He died October 8, 1871. He first married Lucinda Caldwell on December 25, 1825. To them were born two daughters, the first of whom died intestate and without issue before the death of her mother. The other daughter, Sarah, married Col. Roark, and survived her mother, the mother dying on November 4, 1855, while Sarah died September 18, 1894 or 1895. Sarah Roark left surviving her the following children: J. R. Roark, N. B. Roark, J. W. Roark, Emma Ingram, wife of J. F. Ingram, Bettie Ferris (or Farris), widow of Ed Ferris (or Farris), J. L. Roark, Lillie Roark, and R. Roark. The second wife of William Palmer was Cornelia Allen. They were married on February 23, 1857. To them were born three children: William Anthony Palmer, Anna Wilena Palmer, and Lucinda Cornelia Palmer. After the year 1896, Lucinda .C. Palmer married I. N. Parker, and she now lives at Trinity, Tex. Anna Wilena Palmer married J. A. Werner prior to 1890. The other child, William Anthony Palmer, and his wife, Marion, had four children. He died in 1889. His four children were Birdie Palmer Matthews, wife of Wm. C. Matthews, Willie Palmer Roberts, wife of J. D. Roberts, John Wm. Palmer, and Marion Palmer Holman, wife of C. A. Holman. Said William Palmer's second wife, Cornelia, died November 22, 1892, after having married a man named Cary, and to this second wife and Mr. Cary was born one child, Eddie Cary, who now resides at Port Arthur, Tex.

"III. The firm of Carter & Lee, agents, composed of N. M. Carter and Wm. G. Lee, were commission merchants in Montgomery, Ala., and New Orleans, La., during the years 1862 to 1869, inclusive.

"IV. R. E. House died on December 6, 1871, leaving surviving him as his only descendants one son, R. J. House, a daughter Edwina L. House, and another daughter Nellie B. House, who married F. L. Dilley. Said Nellie B. Dilley died on September 24, 1885.

"V. Prior to and during the year 1873, F. M. Hall and Annie E. Hall were husband and wife. Said F. M. Hall died intestate and without issue. His widow, Annie E. Hall, prior to the year 1880, married W. Crawford Allen.

"VI. Prior to 1912 defendants entered into a contract with Kirby Lumber Company under which several billion feet of timber, including that on the Vickers league, was to be cut by the lumber company during and over a long number of years, and payments on this contract were made at stated intervals. No part of the hardwood timber on the Vickers league has been cut. From the J. A. Vickers league of land the said Kirby Lumber Company in the year 1912 cut 8,058,157 feet of pine timber; in the year 1913 cut 134,798 feet of pine timber; in the year 1919 cut 2,150,646 feet of pine timber; and in March, 1920, cut 53,197 feet of pine timber. The total amount of timber cut by defendants during the years stated is 10,396,798 feet, and the same had a market value of $3.50 per thousand feet, which sum defendant received prior to May 12, 1920.

"VII. The deed and all other records of Liberty county, Tex., were destroyed by fire in the year 1874.

"B. On August 27, 1835, the John A. Vickers league of land, of which the land in controversy in this suit is a part, was duly titled by the state of Coahuila and Texas to John A. Vickers. Said Vickers on July 4, 1837, executed his deed conveying all of the league to William Palmer; this deed was recorded in Liberty county on April 8, 1842, the land then being in that county. But the record of this deed in Liberty county was destroyed by fire in 1874, and the deed was not again recorded until on March 4, 1896, when it was recorded in Hardin county, Tex., in which the land has been since the creation of Hardin county in 1858. This deed was never recorded in Tyler county, in which the land was from the creation of Tyler county in 1846 until the creation of Hardin county in 1858. While the deed from J. A. Vickers to him was of record in Liberty county,

said William Palmer, on December 27, 1867, wrote his will, which was probated in Walker county in 1871. A certified copy of neither this will nor its probate was ever recorded in Hardin county. In so far as this will affected any property of William Palmer its provisions were:

" 'Item 2nd: It is my will and desire that the sum of twenty-five dollars be paid out of my estate to my daughter, Sarah A. Roark.

" 'Item 3rd: I will and bequeath to my beloved wife, Cornelia Emeline Palmer, and my daughter, Wilina Anna Palmer, and my son, William Anthony Palmer, and my daughter, Lucinda Cornelia Palmer, and to any other child or children as may be born of the present marriage, all my entire estate both real and personal, consisting of the following described property, to wit: The place on which I now live in Walker county aforesaid, embracing a tract of land of five hundred acres more or less, together with all and singular the dwelling houses and their furniture, kitchens and their utensils and all the outhouses and all the improvements thereon situate or in any wise appertaining to the said place, together with all the horses, mules, cattle, hogs, &c., &c., which may belong to me at the time of my death and also all money I may have and all silver ware I may have at the time of my death.

" 'Item 4th: It is my further will and desire that the property thus bequeathed shall not be divided or distributed until my daughter Willena Palmer marries or becomes of age, then it is my wish that all the property shall be appraised and be equally divided between my wife Cornelia Emeline Palmer and my daughter Willena Palmer and my son William Anthony Palmer and my daughter Lucinda Cornelia Palmer and such other child or children if any that may be born of the present marriage.'

"C-1. After John A. Vickers had, on July 4, 1837, made the deed to William Palmer, but before said Palmer had filed his said deed for record, he (said Vickers) executed another deed dated September 11, 1839, conveying to H. L. Wiggins all of said league of land for a consideration of $1,600 and warranting the title thereto generally. This deed was recorded in Tyler county, Tex., on January 3, 1862, and in Hardin county, Tex., on June 14, 1867. A certified copy of said deed from the Tyler county records was recorded in Hardin county on May 5, 1927. The plaintiffs admitted that by regular chain of deeds purporting to convey said league of land the title that Wiggins had passed regularly to the defendants. The defendants, however, produced in evidence a regular chain of deeds from said H. L. Wiggins down to Fannie R. Carter, each of said deeds conveying said league of land and being regularly recorded in Hardin county prior to February 24, 1890, when said Fannie R. Carter and her husband conveyed the league of land to John P. Irvin for a consideration of $2,214, recited as paid by Irvin. This deed was recorded on March 4, 1890. At the date of this deed the records of neither Liberty county, Tyler county, nor Hardin county showed any deed or other instrument indicating any character of claim by or under William Palmer. I find that Irvin was an innocent purchaser of said land for value, and without notice. On December 11, 1891, John P. Irvin, for a consideration of $5 per

acre, conveyed all of said league of land to the Texas Pine Land Association. This land was purchased by said Texas Pine Land Association through John H. Kirby, its manager and Texas representative. At the time that said land was purchased and the conveyance made to said Texas Pine Land Association there was nothing of record in Hardin county or elsewhere to give notice to said purchaser of any title or claim asserted by or under William Palmer. Said Texas Pine Land Association in good faith paid value of said land, believing that it was obtaining the title thereto and without notice of any fact or circumstance to indicate that an adverse claim was asserted by or under the unrecorded deed from John A. Vickers to William Palmer.

"C-2. On September 3, 1849, E. M. Stephens, and on May 17, 1854, John M. Stephens executed their deeds conveying to Mary E. Brown and Mary E. Frazer (the same person) all of their title and interest in said Vickers league. These deeds were recorded in 1854 in Tyler county, Tex., where the land was then situated. Said Frazer (née Brown) and husband conveyed the league to T. J. Word by deed dated and recorded in 1855. By regular chain of more than twenty deeds this T. J. Word title to the tract in controversy passed regularly down to the Reliance Lumber Company prior to 1897. These numerous deeds passing the title from T. J. Word down to Reliance Lumber Company were executed and recorded at various times and from time to time beginning with and subsequent to the year 1866. This active claim, evidenced by these numerous transfers, the nonclaim during said time by William Palmer, and the express statement in 1867 by William Palmer in his will that his entire estate consisted of certain property of which the land in controversy was no part, though the deed to him was then of record in Liberty county, make it more reasonable than not to believe that William Palmer prior to writing his will had conveyed the land to those from whom Mary E. Frazer acquired title to said league; and I find that such conveyance was made by said Palmer.

"C-3. The Texas Pine Land Association, holding under the Wiggins chain of title (C-1 above) and the Reliance Lumber Company, holding under the Frazer chain (C-2 above), on December 31, 1897, executed a joint deed conveying each to the other an undivided one-half of all of said Vickers league, except the 160 acres in the northeast corner not in controversy and referred to in the pleadings as the Kirby tract. Said Reliance Lumber Company and Texas Pine Land Association conveyed the 300 acres of the league west of the creek to Olive & Sternenberg in 1899. This 300 acres is not in controversy. By judgment against the Texas Pine Land Association, Ike Fountain recovered 160 acres of the league not in controversy, but referred to in the pleadings as the Fountain tract. The Texas Pine Land Association by deed dated and recorded in 1901 conveyed its 1,894 acres of land in said league to the Houston Oil Company of Texas. By deed dated and recorded in 1902, the Reliance Lumber Company conveyed an equal acreage in the league to said Houston Oil Company of Texas. The trustees of the Southwestern Settlement & Development Company (not incorporated) by deed from the Houston Oil Company of Texas, dated and re-

corded in 1916, acquired an interest in said land. By deed from said Houston Oil Company of Texas and said trustees, dated and recorded in November, 1916, the Republic Production Company acquired an interest in said lands. The said Houston Oil Company of Texas, Republic Production Company, and said trustees since said dates have been the holders of the title that the Houston Oil Company of Texas, purchased in 1901 and 1902 as above stated.

"D. In 1896 Anna Werner, Lucinda C. Palmer, and the heirs of Sarah Roark, styling themselves the heirs of William Palmer, deceased, executed their deeds to the trustees of the Texas Pine Land Association and to John H. Kirby, conveying all of the league of land granted to J. A. Vickers. Said Kirby later in 1897 made a deed to said Texas Pine Land Association. These deeds from the said Palmer heirs purported to convey the entire league of land to said grantees. Said grantees, in purchasing for a mere nominal consideration the league of land from said persons, did so without recognizing that said persons had any right, title, or interest, as holding from and under William Palmer, said Kirby and said Texas Pine Land Association having merely purchased their peace from said Palmer heirs to avoid annoyance.

"E. In 1910 the representative of the Houston Oil Company of Texas placed a tenant, namely Rob Drake, on the land in controversy. In March, 1911, one H. B. Wilson became the tenant of said company and in the spring of that year as such tenant began his occupancy of the land, which continued until Wilson moved to Beaumont in 1919. During this period from 1910 to 1919, a period of more than eight years, the Houston Oil Company of Texas and the other defendants by these tenants were in the actual, peaceable and adverse possession of the land in controversy, holding under deeds duly recorded conveying to them the entire estate in said property, cultivating, using, and enjoying it as their own property, and during all of which time said defendants regularly paid before delinquency all taxes on said land. The occupancy of said land by the defendants was adverse and hostile to all claims of plaintiffs. I find that defendants acquired title under the 5-year statute of limitation to all of the land involved in this suit.

## "Conclusions of Law.

"From the facts in evidence, as above found by me, I have rendered judgment in this cause against plaintiffs for the land and damages sued for, and on the cross-action of the defendants have rendered affirmative judgment against plaintiffs and in favor of defendants for all the land involved.

"The defendants claim under what may be termed the junior title having its beginning in the deed from John A. Vickers to H. L. Wiggins dated September 11, 1839. The older deed from the original grantee to William Palmer had not been recorded at the date of the junior deed, and in fact it was not recorded until April 19, 1842. Therefore this junior deed to Wiggins, under the registry laws of 1836, and under the facts in evidence in this case, became and now is the superior record title to the league of land. There is nothing to show that the junior purchaser, Wiggins, was other than an innocent purchaser. Under the familiar doctrine announced in Houston Oil Co. v. Kimball, 103 Tex.

101, 122 S. W. 533, 124 S. W. 85, and Houston Oil Co. v. Village Mills Co. (Tex. Com. App.) 241 S. W. 132, the defendants have as a matter of law shown superior record title to the claim of plaintiffs under the prior but unrecorded deed to William Palmer.

[1] "The plaintiffs offered in evidence the will of William Palmer, their ancestor. In this will William Palmer affirmatively states that all of his entire estate both real and personal consisted of certain particular property. The land in controversy was not referred to. This declaration of William Palmer, negativing a claim by him to the Vickers league, is in plaintiffs' chain of title, and, if not binding on them as a matter of law, sustains and fully accounts for the Mary Frazer chain of title, actively spread upon the records in 1849 and for 50 years thereafter. There was raised from such facts and circumstances above set out the issue of whether or not the title to the land had regularly passed from William Palmer to those from whom Mary E. Frazer (née Brown) held. With her chain of title and the deed to him both of record, Palmer in his will asserted no claim to the land. After the date of his will almost 30 years elapsed before any claim under him was asserted by anyone. It is more reasonably probable that a transfer of the league was made by William Palmer than that it was not made. Southwestern Settlement & Development Co. v. Village Mills Co. (Tex. Civ. App.) 230 S. W. 871.

[2, 3] "When John P. Irvin purchased (in 1890), the record of the William Palmer deed in Liberty county had been destroyed for 16 years, the deed had not been re-registered, so the former record had ceased to operate as notice. Barcus v. Brigham, 84 Tex. 539, 19 S. W. 703; Gammel's Laws, vol. 8, pp. 102, 881, and 1335. The recital that John P. Irvin paid $2,214 for the land is admissible as a circumstance to show that he was an innocent purchaser of the land in good faith. Davidson v. Ryle, 103 Tex. 209, 124 S. W. 616, 125 S. W. 881.

"In December, 1891, the Texas Pine Land Association purchased all of the land in controversy from John P. Irvin under circumstances sufficient to entitle it to be protected as an innocent purchaser. Mr. Kirby, who negotiated the purchase, examined the records and found nothing to indicate any claim by William Palmer or his heirs. He knew nothing of any such claim. Thus the record affirmatively shows that both John P. Irvin and the Texas Pine Land Association were innocent purchasers without notice and for value against any claim asserted under the William Palmer claim.

[4] "Plaintiffs contend that, as defendants and they both hold as or from the heirs of William Palmer, the presumption of title in the common source precludes defendants from showing (1) their superior title as a matter of law from H. L. Wiggins, (2) that Palmer's title passed to Mary E. Frazer, (3) the innocent purchase of John P. Irvin, and (4) the innocent purchase of the Texas Pine Land Association. The mere presumption that the common source had title yields here to facts that affirmatively and conclusively show that William Palmer did not have the title when he died. The superior title as a matter of law had vested in H. L. Wiggins. Houston Oil Co. v. Kimball, 103 Tex. 101, 122 S. W. 533, 124 S. W. 85. All claim

that Palmer had is shown by circumstances to have passed from him. This is established by his nonclaim, by his will, and by the active claim of Mary E. Frazer and her vendees. The defendants in this case not only show title outstanding and superior to the title claimed by plaintiffs, but defendants by direct and regular chain of title connect themselves with and show ownership of such title outstanding and superior to the Palmer claim. This entitled them to judgment for all of the land without regard to the question of common source. Rice v. Railway, 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72; Ferguson v. Ricketts, 93 Tex. 565, 57 S. W. 19.

[5] "The purchase by John H. Kirby and Texas Pine Land Association from the heirs of Palmer was not a recognition of the Palmer ownership. To the contrary, the undisputed evidence shows that such purchase was made to avoid annoyance and possible litigation and with the belief that the Palmer title and chain was worthless. One has the right to purchase his peace without recognizing the validity of the title or claim acquired. Houston Oil Co. v. Davis, 62 Tex. Civ. App. 658, 132 S. W. 808.

[6] "The defendants for more than 8 years had the adverse possession, payment of taxes, and holding under recorded deeds that perfected their title under the provisions of the 5-year statute of limitations. They were in possession under deeds purporting to convey the entire property. Even their deeds from some of the heirs of William Palmer purported to convey the entire property and not a mere interest therein. Hence the possession of defendants clearly was hostile and adverse, and they are entitled to the land by virtue of their possession. Olsen v. Grelle (Tex. Com. App.) 228 S. W. 927.

"Not only are the facts for the defendants in this case, but the well-settled and salutary principles that are the law of this state require that all recovery be denied to the plaintiffs in this suit."

As shown by the court's findings, the John A. Vickers league of land was titled by the state of Coahuila and Texas to John A. Vickers on August 27, 1835. Vickers on July 4, 1837, by deed duly executed, conveyed all of the league to William Palmer. This deed was recorded in Liberty county on April 8, 1842, the land then being in that county; but the record of this deed in Liberty county was destroyed by fire in 1874, and the deed was not again recorded until March 4, 1896, when it was recorded in Hardin county, Tex., in which the land has been since the creation of said county in 1858. This deed was never recorded in Tyler county, in which the land was situated from the creation of Tyler county in 1846 until the creation of Hardin county in 1858. Appellants claim under this deed.

After the deed from Vickers to William Palmer was executed, but before it was filed for record, Vickers, on September 11, 1839, executed a deed to H. L. Wiggins conveying the same league of land. This deed was never recorded in Liberty county, but was first recorded in Tyler county on January 3, 1862, and subsequently in Hardin county June 14, 1867. This title passed regularly from Wiggins down to appellees.

[7] While we think the court was correct in his several findings and conclusions and we so hold, we find it necessary to discuss but one. Both deeds from Vickers are controlled in their effect by the law of December 20, 1836. Section 40 of this act reads:

"No deed, conveyance, lien, or other instrument of writing, shall take effect as regards the interest and rights of third parties, until the same shall have been duly proven and presented to the court, as required by this act, for the recording of land titles." Gammel's Laws, vol. 1, p. 1216; Hartley's Dig. art. 2757.

Interpreting this statute, Judge Williams, in Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 853, held that the junior grantee of land took title as against a senior grantee whose deed was not of record at the date of the execution of the deed to the junior grantee, unless it was shown that the junior purchaser was not a bona fide purchaser for value without notice of the senior deed, and that the burden of so proving was upon the holder of the senior title. This holding was again announced in Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85. It is admitted that, at the time Vickers executed the deed to Wiggins, September 11, 1839, Palmer's deed from Vickers, of date July 4, 1837, was not of record. There was no proof upon the issue of bona fide purchaser as to Wiggins. So, under the rule as announced in the Kimball Cases, the superior title to the land vested in Wiggins.

But appellants contend that the junior deed from Vickers to Wiggins was inoperative against Palmer's deed until Wiggins' deed was placed of record, and that, as he did not register his deed until after Palmer's deed was recorded, it never became operative —in other words, that it is the date of the registration of the junior deed that gives it validity, and not the date of its execution. Appellants say:

"Had the deed from Vickers to Wiggins been duly recorded prior to the recording of the deed from Vickers to Palmer, it would have passed to Wiggins the superior title subject to be attacked only by showing that it was a title acquired in bad faith."

"There is no authority or reason for saying, as contended by defendants in this case and found by the trial court, that a junior unrecorded deed, under the act of 1836 is of greater standing than a senior unrecorded deed. The plain meaning of the statute is that the recordation of the instrument is the act of making it effective, and prior to that time as against third persons it has no effect whatsoever."

"It would not be disputed that, if Wiggins assumed and met the burden of showing a purchase of the property for value and without notice, that his deed would protect his ownership in the property. After the act of 1840, this burden rested on him, and would and now

rest on him, and before the act of 1840 he could only relieve himself of this burden by complying with the law and taking a deed properly proven for registration and recording the same. If he had done this, the burden then, under the law, would have shifted, and is and would have become effective as against Palmer's title, and Palmer would have had the burden of proving want of consideration, or notice in Wiggins, of the existence of his deed."

Appellants cite us to Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 853, as sustaining this contention, insisting that the holding there was based upon the fact that the junior deed was placed of record before the senior deed. This case does not support the contention of appellants, but holds directly to the contrary. It is true that in that case the junior deed was recorded prior to the second deed, but that was not the reason that it was held to pass the superior title. It was plainly held that, as the junior deed was *executed* before the senior deed was *recorded*, it passed the title to the junior purchaser, unless it was shown that the junior purchaser had not paid value or that he bought with notice of the senior deed, and that the burden of so showing was upon the holder of the senior title, and reversed the case and remanded it for proof upon that issue. The case was again before the Supreme Court in 103 Tex. 94, 122 S. W. 533, 124 S. W. 85, and the former holding as to the effect of the deed and the burden of proof was specifically approved and reannounced. These decisions also determine against appellants their contention as to a junior deed not becoming effective against a senior unrecorded deed until it is registered. Judge Brown, in the case reported in 103 Tex. 94, 122 S. W. 533, 124 S. W. 85, says:

"Plaintiffs in error request that this court again consider the point decided on certified question, now contending, as before, that the burden was upon the plaintiffs to prove that Parmer paid a valuable consideration to Nelson and did not have notice of the deed from Nelson to Brown. We are of opinion that the decision of this court in Kimball v. Houston Oil Co., 100 Tex. 336 [99 S. W. 852] is a correct interpretation of article 2757 (Hartley's Digest), being an act of 1836, which was in force when the deeds from Nelson to Brown and from Nelson to Parmer were made. *The first deed being unrecorded when the second was executed, the deed to Parmer conveyed the title unless those who claimed under the deed to Brown should prove that Parmer had notice of the deed to Brown when he bought, or that he did not pay a valuable consideration for the land.*" (Italics ours.)

He did not say the first deed not being of record when the second deed was *recorded*, the second deed conveyed title, but states

very plainly that the first deed being unrecorded when the second deed was *executed*, the second deed conveyed the title, in the absence of proof by the senior grantee that the junior grantee took with notice of the senior unrecorded deed, or that he did not pay a valuable consideration for the land. In the instant case, there is no proof as to bona fide purchase by Wiggins, either to prove or disprove that status. This holding was again followed in Houston Oil Co. v. Village Mills Co. (Tex. Com. App.) 241 S. W. 132. In that case the Houston Oil Company claimed under junior title beginning in a deed from the original grantee to Moore, of date June 5, 1838, recorded March 22, 1841. The Village Mills Company claimed under the senior title, beginning in a deed from the original grantee to Henrie of date January 27, 1836, which was not recorded until 1846. Judge Powell, speaking for Section B of the Commission of Appeals, held that the Houston Oil Company, the junior title holders, had the superior title, not because the junior deed was placed of record first, but because the Village Mills Company did not show that Moore, the junior purchaser, purchased with notice of the prior unrecorded deed out of the original grantee, or that he bought without paying value for the land.

Under the law of 1836, if the junior deed is executed at a time when the senior deed is unrecorded, and the junior purchaser pays value and has no notice of the senior deed, it is immaterial whether the junior deed is ever recorded. The matter of its recordation is wholly immaterial. Judge Brown, in Houston Oil Co. v. Kimball, 103 Tex. 108, 122 S. W. 540, 124 S. W. 85, supra, discussing this question, said:

"* * * Let us suppose that the Parmer deed had not been placed upon record at any time. Under the law of 1837, the fact that the deed to Brown was not on record when the deed to Parmer was executed gave to the latter deed the effect of vesting the legal title to the land in Parmer, with the equity in Brown to show a superior right by proving that Parmer had notice of the prior conveyance or that he did not pay a valuable consideration for it. If Parmer had failed entirely to record his deed it would not have affected the title of Brown or of any one holding under him. No duty rested upon Parmer to record his deed as notice to the prior purchaser, Brown, nor to his vendees."

As our decision of the question discussed fully determines the case, we do not deem it necessary to discuss any of the other matters presented. The judgment should be affirmed, and it is so ordered.

Affirmed.