## HUMBLE OIL & REFINING CO. v. ROBERTSON.
### No. 4397.

Court of Civil Appeals of Texas. Texarkana.
Feb. 13, 1934.

Rehearing Denied Feb. 22, 1934.

Davidson, Blalock & Blalock, of Marshall, and R. E. Seagler and K. W. Gilmore, both of Houston, for appellant.

Jones & Jones, of Marshall, Ben A. Harper, of Tyler, and W. B. Handley, of Dallas, for appellee.

SELLERS, Justice.

L. B. Robertson brought this suit in the district court of Harrison county against Humble Oil & Refining Company to recover damages in the sum of $30,000 for personal injuries received to himself. For cause of action plaintiff alleged, in substance, that on or about April 7, 1931, defendant was engaged in the business of producing and refining oil in Gregg county, Tex., and particularly near Kilgore, Tex., and at a point about four miles southwest of Kilgore in said county. That at such place defendant had located its said tank or tanks being used as depositories for various oils taken from wells of defendant or others in the oil field near Kilgore. That the plaintiff was an employee of the J. W. Olvey Drilling Company and required to watch a certain water pump of his employer near the tanks of defendant and at a low place where water was being pumped to the well operated by the J. W. Olvey Drilling Company. That on or about said date defendant negligently permitted to escape from said tank inflammable gas, although well knowing that said gas would be calculated to collect in pockets in low places such as where plaintiff was working; and that said gas exploded and/or ignited in a low place where plaintiff was working, causing him in an effort to escape from the ensuing fire to severely fall upon and strike his left leg in such manner as to inflict an injury. That he was terrorized and frightened to such extent that he made a sudden dash or movement to gain safety, and in fleeing from said exploded and burning gas he fell upon his leg in such manner as to break, fracture, and tear loose the bones of his foot and particularly the bones in and near the

ankle joint. Plaintiff pleaded a number of particular acts of negligence on the part of defendant which the disposition of this appeal makes unnecessary to set out.

The defendant's answer contained a general demurrer, a general denial, and specially alleged contributory negligence on the part of plaintiff. At the close of the evidence offered by the plaintiff, both plaintiff and defendant closed their case, and the court submitted certain special issues to the jury which were answered by the jury in favor of plaintiff, and in accordance with the jury's verdict the court entered judgment for plaintiff in the sum of $5,000. From this judgment the defendant has duly prosecuted this appeal.

By appropriate assignments of error the appellant complains of the sufficiency of the evidence to sustain the jury's verdict and the judgment of the court based thereon. The court submitted to the jury issue No. 1, which, together with the jury's answer, is as follows: "Do you find from a preponderance of the evidence that any of the gas which burned at the place where the plaintiff was working at the time of his injury came from the tanks of the defendant, Humble Oil & Refining Company?" Answer: "Yes."

■ We have concluded that the great preponderance of the evidence on this issue is contrary to the jury's finding. The substance of the evidence on this issue is to the effect that appellee at the time of his injury on April 7, 1931, was working for the J. W. Olvey Drilling Company and was required to watch a certain water pump. This pump was located in a comparatively new oil field which was at the time of appellee's injury about one and one-half miles wide and about two miles long. The water pump was located in what may be termed a "hollow" near where two creeks ran together. On this date about midnight gas which had settled around the place where the water pump was located became ignited, either from a fire which appellee had kindled, or from the exhaust of the engine, or from a cigarette which appellee was smoking. The fire was first noticed by appellee close to his feet. He became frightened and while running away from the fire injured his foot, for which injury he here seeks to recover. About 300 or 400 yards from the pump were located four tanks belonging to appellant, from which appellee claims the gas escaped which exploded and caused the fire. These tanks were constructed only a few days before appellee received his injury. No witnesses testified that these tanks were being used by appellant for the storage of oil or that gas was escaping therefrom before appellee received his injury. There is evidence that the next day after the injury gas was seen to escape from the tanks in large quantities. There were brush piles between the place where appellee was working and the tanks belonging to appellant. Appellee's description of the fire is that it followed these brush piles, and that an explosion sounding somewhat like the report of a gun would happen as the fire would reach each of the brush piles, and the blaze would extend 10 or 15 feet into the air. This fire continued in the direction of appellant's tanks up to a point about 30 or 40 feet from them, stopping when it reached the cleared place where the tanks were located. The evidence further shows that within one-half or three-quarters of a mile from the pump where appellee was working there was located at least three or four oil wells not the property of appellant, from which there was being produced at this time several thousand barrels of oil a day each. That a great deal of gas was being given off from these wells and turned loose in the air. That in the opinion of the witness this gas would be carried by the wind some distance and that portion of the gas which was not dissipated or rendered harmless by the air would settle in low places. That had been seen in great quantities in low places in this field. That it later became necessary to burn the escaping gas from the wells and tanks in this field, but as far as the evidence shows, none was being burned at the time of appellee's injury.

■ From the entire record, the substance of the material portion of which is above set out, we have concluded, as above stated, that the overwhelming preponderance of the evidence was contrary to the jury's finding that gas which caused the fire complained of came from the tanks of appellant. In view of the undisputed evidence to the effect that there were several sources from which the gas that caused the fire could have come, we think it at least incumbent upon appellee to show that the appellant was using his tanks as a storage for oil or that gas was escaping therefrom immediately before the fire before a jury would be authorized to answer the issue submitted in the affirmative.

■ Appellant insists that we should reverse and render this judgment. With this view we are not in accord. By express provision of statute, it is made the duty of the Court of Civil Appeals to decide and make

conclusions upon both issues "of law" and "of fact." Article 1876 (Vernon's Ann. Civ. St.). Under this authority such appellate courts can, and in the proper case shall, reverse and remand the cause where the verdict is contrary either to the weight of the evidence or against the preponderance of the evidence. Wininger v. Ry. Co., 105 Tex. 56, 143 S. W. 1150; Manning v. Ry., 107 Tex. 546, 181 S. W. 687; Davidson v. Ryle, 103 Tex. 209, 124 S. W. 616, 125 S. W. 881; and other cases. As stated in the case of Wininger, supra, as well as in others: "The Honorable Court of Civil Appeals had authority to reverse the judgment of the trial court on the preponderance of the evidence; but it could not render the judgment, if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." It is only where the Court of Civil Appeals undertakes to "render the judgment" in dealing with the facts of the case that they exceed their authority, in case there is some evidence tending to support the verdict of the jury. Vann v. Ins. Co. (Tex. Com. App.) 24 S.W.(2d) 347; Pounds v. Minter (Tex. Com. App.) 13 S.W.(2d) 351; Eastham v. Hunter, 98 Tex. 560, 86 S. W. 323, 324; Underwood v. Jones, 95 Tex. 121, 65 S. W. 480; Stevens v. Masterson, 90 Tex. 425, 39 S. W. 292, 921; and other cases. As stated in the Hunter Case: "Upon reversing the judgment of the trial court, the Court of Civil Appeals could render judgment only in case the evidence is so conclusive that there was no issue as to notice which should have been submitted to a jury—that is, if the trial court should have instructed a verdict, then the Court of Civil Appeals correctly rendered judgment; otherwise it had no authority to do so." That was the same ruling made in the cases of Vann and Pounds, supra. Those cases undertook "to render judgment," and not "to remand the case." The difference in the authority of the court is that of "rendering," as a pure matter of law, a judgment, and "remanding" a cause in matters concerning the weight and preponderance of the evidence.

The disposition made of this appeal renders discussion of other assignments of appellant and cross-assignments of the appellee unnecessary.

The judgment of the trial court will be reversed, and the cause remanded.