ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1911.

*(Continued from Volume 156)*

## CLARA D. WINN, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

St. Louis Court of Appeals, May 2, 1911.

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Defenses: Burden of Proof: Trial Practice.** In an action on a life insurance certificate issued by a fraternal beneficiary association, where the plaintiff makes a prima facie case, the burden of proving a defense that insured made misstatements in his application for membership is on defendant.

2. **TRIAL PRACTICE: Undisputed Evidence not Conclusive: Credibility of Witnesses.** Although testimony tending to establish a defense is uncontradicted, plaintiff is entitled to have the matter submitted to the jury to have them determine the credibility of such testimony.

3. **EVIDENCE: Refusal to Admit: Cumulative Evidence.** Where the trial court had already admitted a page of an account book in evidence, it was not error to refuse to allow the same page to be again offered and read in evidence, as such refusal merely avoided useless repetition.

4. ————: **Witnesses: Impeachment: Conviction of Misdemeanor.** Evidence that a witness has been convicted of a misdemeanor is admissible to impeach him.

157 App.—1                    (1)

Winn v. Modern Woodmen.

5. ———: ———: Refreshing Memory: Discretion of Trial Court: Trial Practice. The matter of refreshing a witness' memory rests largely in the discretion of the trial judge, and his action will not call for a reversal unless it was an abuse of discretion.

6. ———: ———: ———: ———: Facts Stated. The refusal of a trial judge to allow a physician to refresh his memory from an affidavit made by him, which embodied a copy of entries appearing in his account book, was not an abuse of discretion, when the account book had been read in evidence and both it and the affidavit were before the court; and although the dates of certain transactions were important to the inquiry, and the witness, by reason of such refusal, was unable to specifically mention such dates, the party offering him was not prejudiced thereby, since the witness accomplished the same thing by stating, in effect, that all of such transactions were entered in his account book, which was in evidence.

7. FRATERNAL BENEFICIARY ASSOCIATIONS: Defenses: Misstatements: Instructions: Definitions. In an action on a fraternal benefit certificate, the insurer defended on the ground that a warranty in the application that insured had not consulted a physician for a certain length of time before his application was untrue. An instruction, requested by defendant, was that if insured talked with a doctor with regard to his health, and if the doctor gave him certain medicine for an ailment, the verdict should be for defendant. Before giving the instruction, the court changed the words "talked with" to "consulted." Held, that this change was not improper, for "consulted", as used in this connection, means the same as "talked with."

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Benj. D. Smith, Chas. K. Hart* and *James P. Boyd* for appellant.

(1) The contract herein sued on is a contract between the member and the Society and includes the application, the certificate, and the constitution and by-laws of the defendant. 3 Am. and Ency. of Law, (2d

Ed.), page 108; Bacon on Benefit Societies, secs. 37, 91 and 116; Niblack on Benefit Societies, sec. 136. (2) A warranty is a stipulation inserted in writing on the face of the policy, on the literal truth of fulfillment of which the validity of the entire contract depends. The stipulation is considered to be on the face of the policy, although it may be written in the margin or transversely, or on a subjoined paper, referred to in the policy. Angell on Insurance, sec. 140; Bacon on Benefit Societies, sec. 194; 3 Cooley's Briefs on Law of Insurance, p. 1932; Joyce on Insurance, sec. 1944; Bliss on Life Insurance, sec. 45; May on Insurance, sec. 156. (3) The answers in the application for the benefit certificate herein sued on are warranties. McDermott v. Modern Woodmen, 97 Mo. App. 636; Finch v. Modern Woodmen, 113 Mich., 646; Genrow v. Modern Woodmen, 114 N. W. 1009; Bungart v. Modern Woodmen, 55 N. W. 713; Modern Woodmen of America v. Von Wald, 49 Pac. 782. (4) As a warranty is in the nature of a condition precedent to the validity of a policy, and must be literally true, and if the fact warranted is not true, there is a breach of warranty, it follows as a matter of course that a breach of warranty will avoid the policy. This principle is so fundamental that it scarcely needs the citation of authorities to support it. 3 Cooley's Briefs on the Law of Insurance, p. 1950. (5) In view of the general principle that the materiality of the fact is wholly unessential in the case of a warranty, it is readily deduced that where there is a breach of warranty the policy is avoided, though the statement on which the breach is predicated is in no way material to the risk. 3 Cooley's Briefs on the Law of Insurance, p. 1951; 3 Joyce on Insurance, sec. 1962; McDermott v. Modern Woodmen, 71, S. W. 833; Beard v. Royal Neighbors, 89 Pac. 83. (6) If an answer which the applicant warrants as literally true is false the contract is annulled, whether the false statement was fraudulently or innocently made. 3 Joyce on Insurance, sec. 1964; May on Insurance, sec.

156; 1 Bacon on Benefit Societies, sec. 197; 3 Cooley's Briefs on the Law of Insurance, p. 1954; McDermott v. Modern Woodmen, 71 S. W. 833; Modern Woodmen v. Van Wald, 49 Pac. 782. (7) The statement by Winn that he had consulted no physician within seven years except that on the first of the month (June) he was sick a day or two and had Dr. Connell to see him, was false, incomplete and untrue, and the answer having been warranted to be full, complete, and literally true there was a breach of warranty relieving the defendant from liability, without regard for the character of the ailment for which he consulted or was treated by the physicians, Doctors Gaines, Williams and Connell. McDermott v. Modern Woodmen, 97 Mo. App. 636; Modern Woodmen v. Angle, 127 Mo. App. 94; Aloe v. Mutual Reserve Life Assn., 147 Mo., 561; Bacon on Benefit Societies (3 Ed.), sec. 230a; Metropolitan Life Ins. Co. v. McTague, 49 N. J., Law 587; Cobb v. Assn., 153 Mass. 176; Life Ins. Co. v. Arhelger, 36 Pac. 895; Modern Woodmen v. Von Wald, 49 Pac. 782; Hoover v. Royal Neighbors, 70 Pac. 595; State v. Ruetlinger, 25 S. W. 835; Hubbard v. Life Assn., 100 Fed. 719; Carrothers v. Life Ins. Co., 108 Fed. 487; (8) The admission by Winn in his application to the Ancient Order of United Workmen that he had been sick for two weeks in May was competent evidence against the plaintiff, this being a suit on a contract between the member and a fraternal beneficiary society. Niblack on Benefit Societies (2 Ed.), sec. 325; Bacon on Benefit Societies, secs. 289 and 460; Hanson v. Supreme Lodge, 140 Ill. 301; Thomas v. Grand Lodge, 12 Wash. 500; Supreme Council v. O'Connell, 32 S. E. 946; Smith v. National Benefit Assn., 51 Hun. 575; Taylor v. Grand Lodge, 111 N. W. 919; Elliott on Evidence, sec. 220. (9) Under the terms of the contract sued on it was essential that James Thomas Winn was in good health at the time of the delivery of the benefit certificate to him for said certificate to have become in force. Wilcox v. Sovereign Camp, 76 Mo. App. 573; Lloyd v.

Modern Woodmen, 113 Mo. App. 19; McLendon v. Woodmen of the World, 106 Tenn. 595. (10) Where, as in this case, the undisputed evidence disclosed that one or more answers in the application for membership were false and untrue, it became the duty of the trial court to direct a verdict for the defendant; and the trial court having refused to so direct the jury, the appellate court, will on appeal reverse said judgment. Reichenbach v. Ellerbe, 115 Mo. 588; Lavin v. Grand Lodge, 104 Mo. App. 1; Carroll v. Transit Co., 107 Mo. 653. (11) Where a verdict can be accounted for only on the ground of ignorance, partiality, prejudice, or passion, it will not be permitted to stand. Lang v. Moon, 107 Mo. 334; Caruth v. Richerson, 96 Mo. 186; Avery v. Fitzgerald, 94 Mo. 207; Garrett v. Greenwell, 92 Mo. 120; Spohn v. Railroad, 87 Mo. 74; Whitsett v. Ransom, 79 Mo. 258. (12) The court erred in refusing to admit in evidence the record in Mr. Gaines' day-book of his treatment of Winn on February 11th. It is well settled that book entries made by a party himself or by his clerk in the usual course of his business are admissible in evidence. Milling Co. v. Walsh, 108 Mo. 277.; Robinson et al. v. Smith, 111 Mo. 205; Borgess Inv. Co. v. Vette, 142 Mo. 560. (13) The court erred in refusing to permit Dr. Connell to refresh his recollection as to the dates on which he treated Winn, by his own affidavit, which he testified was copied from the original record of said treatments. Wigmore on Evidence, secs. 760-761; Greenleaf on Evidence (15 Ed.), sec. 436; Elliott on Evidence, sec. 855, 859, 870; Welch v. Green, 24 R. I. 515; Ward v. Transfer and Storage Co., 119 Mo. App. 83, 964. (14) It is well settled that the record of a conviction of a public offense is not admissible to impeach the credibility of a witness unless the record shows that the offense was an infamous crime and not a misdemeanor. State v. Taylor, 98 Mo. 240; State v. Warren, 57 Mo. App. 502; State v. Donnelly, 130 Mo. 642; Gardner v. Ry. Co., 135 Mo. 90.

*J. H. Whitecotton, A. T. Stuart* and *D. M. Proctor* for respondent.

(1) In considering a demurrer to the evidence the court must indulge every inference of fact in favor of the party offering the evidence, which a jury might indulge, with any degree of propriety. George v. Railroad, 40 Mo. App. 433; Pauck v. Provision Co., 159 Mo. 467. (2) We are at a loss to understand why the appellant's counsel insists that, "It is well settled that the record of a conviction of a public offense is not admissible to impeach the credibility of a witness, unless the record shows that the offense was an infamous crime and not a misdemeanor, in the face of the case of State v. Blitz, 171 Mo. 530, which clearly shows that all the cases cited by appellant have been overruled. State v. Blitz, 171 Mo. 530; State v. Kennedy, 207 Mo. 528.

STATEMENT.—Suit by the widow of James Thomas Winn, as beneficiary in a benefit certificate issued to her husband by the defendant, a fraternal beneficiary association, on June 30, 1906. The insured died August 26, 1906. The plaintiff had judgment for the full amount of the certificate and interest, and defendant has appealed. There is no necessity for reciting the evidence in support of the plaintiff's petition. It is sufficient to say that plaintiff's evidence made a prima facie case, and defendant was put to its defenses. Among the defenses one only need be noticed on this appeal, and that is a plea in bar of certain warranties in the application of the deceased for insurance, which defendant alleges turned out to be untrue. It appears that in his application to the defendant for the insurance certain interrogatories were propounded to the insured, which, with his answers to them, were as follows: "Have you, within the last seven years, been treated by or consulted any person, physician or physicians, in regard to personal ailment? Yes. If so, give dates, ailments, duration of

attacks, and name and address of each and all persons or physicians consulted or by whom treated? First of the month I was sick a day or two and had Dr. Connell to see me. Sturgeon, Mo. Were you ever intoxicated? Yes. If so, when last? About three years ago. Have you ever had any disease of the following named organs, or any of the following named diseases or symptoms. Dyspepsia? No. Heart? No." The answer of the defendant says the foregoing answers of the deceased were false; i. e., were not full and complete, literally and exactly true as the application which was part of the contract of the insurance warranted they should be. Plaintiff denied this allegation in her reply. The defendant introduced witnesses whose testimony tended to sustain the defense that the answer of the insured that he was last intoxicated about three years before making the application was false; while the plaintiff adduced considerable evidence tending to prove the contrary. To sustain the defense that when the insured answered that he had consulted Dr. Connell the 1st of June, the month in which the application was made, the insured did not tell the whole truth, and that he answered falsely when he said he had never had dyspepsia or disease of the heart, the defendant introduced the testimony of several witnesses. Dr. Williams testified that at a time which he is confident was within seven years prior to June 25, 1906, but does not recollect whether within one, two or three years he had accidentally met the insured at Sturgeon, Mo., either on the street, or in some house, and something being said about the insured being bilious, looked at his tongue, and gave him a few little calomel tablets. This doctor did not practice in Sturgeon, which was seven miles from his office, and made no charge for this "treatment." Dr. J. T. Gaines testified that on February 11 and 13, 1906, he gave the insured static machine treatments for lumbago, with which he said the insured was suffering; that during April and May, 1906, he had treated the insured for

heart trouble and indigestion. Dr. Connell testified that
prior to June 1, 1906, he had treated the insured for
pleurisy, and that between June 1, and June 25, 1906,
the latter being the date of the application, he had twice
treated the insured for acute indigestion. Drs. Gaines
and Connell contradicted the testimony of each other in
material respects, and on cross-examination of Dr.
Gaines it was developed that in a deposition given before
the trial he had made statements contradictory in essen-
tial particulars of most of his testimony at the trial.

Defendant also produced several witnesses, some of
whom testified that they had severally heard the insured
complain of "stomach trouble," "biliousness," "choking
and sinking spells," before he made the application for
insurance. One said that the insured was not able to
work much; another that at one time the insured had
fainted. Defendant also introduced in evidence the
affidavit of the plaintiff filed with the Knights of the
Maccabees in connection with proof of her claim made
against that society on the death of the insured. This
affidavit contained the following: "(10) Give name
and residence of each and every physician who has pre-
scribed for or attended the deceased during the last five
years of his life? Dr. W. R. S. Connell, Sturgeon, Mo.,
Dr. J. T. Gaines, Sturgeon, Mo., Dr. Williams, Riggs,
Mo. (11) Give duration of last illness? About two
and one-half months. . . . (15) When did you first
notice or learn of any signs or symptoms of failing
health in deceased? The last spring." It was also
shown that an application made by the insured to the
Ancient Order of United Workmen on June 26, 1906,
the day after he made his application to the defendant,
contained the following questions and answers: "Have
you been obliged to consult a doctor, or lose any time
from your usual occupation, on account of sickness at
any time during the last five years? Two weeks, malarial
fever. If so, when and for what? Give dates and dura-
tion? May 18th—two weeks." Plaintiff gave in evi-

·dence the record of several misdemeanor convictions of Dr. Gaines for the purpose of impeaching him. She also ·established by several witnesses that the witness who swore to having seen the insured faint had a bad reputation for truth and veracity, and proved that he had been ·convicted of a misdemeanor. She also produced a considerable number of witnesses, including, among others, the plaintiff and near relations of the insured, whose testimony tended to prove that the health of the insured had been uniformly good, and that those who knew him intimately, including his wife, never heard him make any complaint, and never heard of his being treated by a physician prior to the time of applying for this insurance; that he was a short, heavy-set man with heavy muscles and no surplus flesh, who worked hard at manual labor, sawing and hauling lumber at a sawmill which he owned, and doing carpentering, and in the spring of 1906 ran the store—all without ever losing any time because of sickness; that his death was sudden and unexpected, and due solely to a disorder of the stomach which was not chronic, brought on by violent exercise, scuffling, etc., immediately after having eaten a very hearty meal. All the testimony in the case, both of the plaintiff and defendant, tended to prove that insured did not have malarial fever as stated in the application to the Maccabees. It was also admitted by Gaines, and proved by other witnesses, that the static machine was used on a great many people for mere amusement and advertisement, and one of the witnesses testified that on ·one occasion the insured and he each took a static machine "treatment" at the same time—the witness taking it for "fun" and without knowing that the insured was taking it seriously, if he was. There was also ample evidence of physician witnesses for plaintiff tending to show that, if the insured had had lumbago or pleurisy, he could not have done the manual labor he did do. It was also proved by the physician who examined the insured for the defendant at the time of his application that he had

made a careful examination and discovered no evidence of disease; that the insured had the appearance of a healthy man. The evidence also had a tendency to prove that, at that time the plaintiff made the affidavit to the Maccabees, she was in such a mental and physical condition, caused by severe illness, as not to be cognizant of what the affidavit contained.

The court gave no instruction at the instance of plaintiff, except one, which is correct, on the measure of her recovery in the event the jury should find for her. The court gave all of the instructions offered by the defendant, except that it made a slight change in one of them, and except that it refused to direct a verdict for the defendant at the close of the whole case; and the instructions given covered all the issues in a manner extremely favorable to the defendant. The instruction in which the court made the change was in the following form when offered by the defendant: "The court instructs the jury that if they shall find and believe from the evidence that Dr. J. W. Williams at any time within seven years next before the 25th day of June, 1906, met James Thomas Winn on the streets of Sturgeon, Mo., or at any other place, and that at that time the said James Thomas Winn *talked with* said Dr. Williams with regard to the health of the said Thomas Winn, and that said Dr. Williams, at that time, gave to the said Winn some calomel tablets, for the use of said Winn as a treatment for any personal ailment, if any, of said Winn, and that said Williams was then and there a practicing physician, then your finding will be for the defendant, and in this connection you are instructed that it is not material whether or not the said treatment, if you shall find the same actually occurred, was at the office of said Dr. Williams or not." The change consisted of the striking out of the words "talked with," which we have italicized, and substituting for them the word "consulted." There are other matters which are connected with rulings upon

evidence which we will mention in the opinion proper while discussing such rulings.

CAULFIELD, J. (after stating the facts).—I. The defendant contends that "under the record the evidence is indisputable that Winn did make misstatements in his application for membership, and that consequently the court should have directed a verdict for the defendant, and that the jury wholly disregarded the court's instructions in returning its verdict." We are unable to agree with the defendant in this contention.

The plaintiff had made a prima facie case, and the burden of proving that these statements were false or not wholly true was on the defendant. [Jefferson v. Life Ass'n, 69 Mo. App. 126, 133.] "The plaintiff was entitled to have the jury determine the credibility of the testimony offered, even though she offered nothing to contradict that offered in behalf of defendant." [Gannon v. Gas Co., 145 Mo. 502, 516, 517, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505.] The wisdom of this rule is especially apparent in a case like this, where the witnesses for the defendant testify concerning alleged confidential treatments of a person whose lips have been sealed by death. But plaintiff need not depend upon the rule quoted. The testimony on her behalf was, in our opinion, sufficient upon a test of even the weight of the evidence to justify the jury in finding that all the statements made by the insured in his application for this insurance were substantially and literally true.

II. Defendant complains of the action of the trial court in refusing to admit in evidence a book entry of the alleged static machine treatment of February 11, 1906; the entry being contained on page 92 of Dr. Gaines' alleged day book. But we find that that entire page had already been offered and read in evidence by the defendant, as shown by the following excerpt from the abstract of Dr. Gaines' testimony: "I have the book

with me containing the original entry showing this
treatment. The book which I now show you is our
regular day book. I made the second entry, and Miss
O'Neill made the first. The record of the treatment just
referred to is on page 92. The entry with regard to the
treatment of James Thomas Winn by myself is as fol-
lows: 'February 11, Winn J. T. One treatment.' That
entry occurs in the daily account book of Dr. Connell
and myself. The book was kept in our office eight miles
south of Sturgeon. It contains our daily accounts, our
visits and treatments. This book contains 123 pages."
Defendant offered and read in evidence page 92 of the
book just identified; the same being marked "Exhibit
2A." Immediately following said excerpt in the ab-
stract is a photographic copy of said page 92. We can
discover no error in the refusal of the court to permit
page 92, or any entry thereon, to be offered and read in
evidence after it had already been offered and read.
Such refusal merely avoided useless repetition, and is
not to be condemned. [State v. Punshon, 133 Mo. 44,
55, 34 S. W. 25.]

III. Defendant contends that the court erred in
admitting evidence by way of impeachment that the wit-
ness Gaines had been convicted of misdemeanors. This
contention is overruled on the authority of State v.
Glitz, 171 Mo. 530, 539, 71 S. W. 1027.

IV. The defendant next contends that the trial
court "erred in refusing to permit Dr. Connell to refresh
his recollection as to the dates on which he treated
Winn, by his own affidavit, which he testified was copied
from the original record of said treatments." The evi-
dence on behalf of the defendant tended to prove that
Dr. Connell had given the insured two treatments in
June, before the application was made for the insurance
and that he himself had made entries in Dr. Gaines' day
book showing these treatments. Now, when Dr. Connell
was testifying, he examined the affidavit which was pre-

sented to him, and stated that "the entries therein contained were taken from the day book, which I have just mentioned, and were compared by me at the time the affidavit was prepared." He was then asked to examine the affidavit and to refresh his memory by it, and state, if he could, the dates of the visits he made to the insured after June 1, 1906. The plaintiff objected to this procedure on the ground that the paper was not competent to use for the purpose of refreshing the memory of the witness, not being the original entry. But the witness was permitted to state, in effect, that the entries in the day book represented the visits that he had made. He also stated that he had treated the insured on June 3 and 10, 1906, but said that this testimony was from his memory of the contents of the affidavit which he had read the day before. We do not feel constrained to reverse the judgment on account of the court's action in the respect mentioned.

The matter of refreshing a witness' memory in the manner proposed is of akin to the matter of putting leading questions to one's own witnesses, and, like it, rests very largely in the discretion of the trial judge, and, if it does not appear he abused his discretion, his action will not call for a reversal of the judgment. It appears that the original entries, of which the affidavit contained mere copies, had been offered and read in evidence prior to the witness' examination, and the objection made to the affidavit implied that he might use this original to refresh his recollection, and we are not prepared to say that the court's insistence that the witness use the original, instead of the copy, when both were before the court, was an abuse of the court's sound discretion.

Nor do we feel that the defendant suffered any substantial prejudice by the witness' failing to refresh his memory. It is true that, by reason of such failure, he did not specifically mention each of the dates in June on which he is said to have treated the insured, but he ac-

complished the same thing by stating in effect that all of his June treatments were entered in the day book, which, with such entries, had been offered and read in evidence and were before the jury.

V. The defendant assigns as error the action of the trial court in refusing to give the instruction set forth in our statement of facts without first substituting the word "consulted" for the words "talked with." The portion in question of the instruction as offered is as follows: "And at that time the said James Thomas Winn talked with said Dr. Williams with regard to the health of said Thomas Winn, and that said Dr. Williams, at that time, gave to the said Winn some calomel tablets, for the use of said Winn as a treatment for any personal ailment, if any, of said Winn, and that said Williams was then and there a practicing physician." We confess our inability to discover that the substitution of the word "consulted" for the words "talked with" effected any substantial change in the meaning of this instruction. In the ordinary language of life, in which instructions to juries are most properly couched, the language as used by the defendant in the instruction as offered could be taken to mean nothing else than that the insured "consulted" with the physician. He, a layman, "talked with" the physician about his health, and at the same time got medical treatment from him. To "consult" means to apply for direction or information; ask the advice of. Now, why should a layman talk with a physician about his health and get medicine from him except it be with a view of obtaining direction, information, or advice as to his health, and, if he did that, he was consulting with him. The layman and the physician are not on terms of equality on the subject of the health of the layman, and, where a talk on that subject is accompanied by the giving of medicine by the physician to the layman, the inference seems to us irresistible that the "talk" was a consultation; at least, unless the attention of the jury

was especially called to the refined distinction, we feel sure they would not have noticed it. Being unable to discover any substantial difference between the instruction as asked and the instruction as given, this assignment of error is overruled.

The judgment is affirmed.

*Reynolds, P. J.,* and *Nortoni, J.,* concur.