WILLIAM R. ELLIOTT, RESPONDENT, v. GRAND LODGE BROTHERHOOD OF RAILROAD TRAINMEN, APPELLANT.—95 S. W. (2d) 829.

Kansas City Court of Appeals.   May 25, 1936.

50

*David B. Logsdon* and *V. E. Phillips* for respondent.

*Tom J. McGrath* and *Harding, Murphy & Tucker* for appellant.

CAMPBELL, C.—Plaintiff, on December 12, 1928, made application to the defendant through its local organization in Jefferson City, Missouri, for a benefit certificate, Class G, for $5000. In April, 1929, the defendant accepted the application at its Home Office in Cleveland, Ohio, and forwarded a certificate to its local organization in Jefferson City, Missouri. The certificate was accepted and became a completed contract in Missouri in May, 1929. The certificate stated that plaintiff was a member of Jefferson City Lodge, No. 637, of the Brotherhood and that he was entitled to all of the rights, privileges and benefits of membership and to participate in the beneficiary department, Class G, of the Brotherhood to the amount set forth in Section 68 of the defendant's constitution, which amount in the event of plaintiff's total and permanent disability, as defined in said section 68, would be paid to him; that it was issued upon the condition that plaintiff would comply with the constitution, general rules and regulations of the Brotherhood then existing or which were thereafter adopted; that the certificate with the application, medical examination, the constitution, by-laws and general rules of the Brotherhood constituted the contract; that plaintiff would pay all dues and assessments imposed upon him within the time specified in the constitution and general rules and that a failure to do so forfeited the insurance. Thereafter, plaintiff claiming that he had suffered the permanent loss of the sight of his left eye, brought this suit to recover the benefit provided in the contract. The petition declared upon the certificate alleged that Section 68 of the constitution was as follows:

" 'Any beneficiary member in good standing . . . who shall suffer the complete and permanent loss of sight of one or both eyes, . . . shall be considered totally and permanently disabled . . . and shall thereby be entitled to receive, upon furnishing sufficient and satisfactory proofs of such total and permanent disability, the full

amount of his beneficiary certificate;'" that on or before August 28, 1931, he lost "the sight of his left eye, that such loss is complete and permanent;" that he had performed all of the conditions and requirements of the contract, made demand of the defendant for payment of the benefit in the sum of $5000 and that the demand was refused.

The defendant's answer pleaded the laws of Ohio and stated facts sufficient to show that it was a voluntary fraternal benefit society organized under the laws of Ohio and facts sufficient to show that it was a fraternal benefit society as defined in section 5990, Revised Statutes, Missouri 1929; that the defendant limited its membership to one hazardous occupation and for that reason was not required to obtain a license from the superintendent of insurance to transact business in Missouri; that in the application plaintiff made the following answers to the following questions:

"Q. Have you consulted a physician during the last five years? A. No. . . .

"Q. Have you ever had any disease or injury to eyes or ears and has their acuity ever been questioned? A. 'No;'" that said answers, though warranted to be true, were in fact false; that in February and March, 1928, plaintiff consulted physicians and that at said date plaintiff had a disease of the left eye, "being the same disease of said eye as plaintiff now claims he is suffering from;" that on three occasions prior to the date of the application the acuity of plaintiff's eyes had been questioned; that plaintiff obtained the certificate described in his petition from the defendant by false and fraudulent means in that the answers, about quoted, were knowingly and falsely made by plaintiff for the purpose of deceiving the defendant and "that the matters so misrepresented actually contributed to the contingency upon which the policy was to become due and payable and that had it not been for said false and fraudulent misrepresentations, defendant would not have issued said certificate . . .;" that upon discovering the falsity of the statements in the application it tendered to the plaintiff all of the assesments which it had received from him, which was the sum of $228.25, and that it tendered said sum and had deposited it with the clerk of the court for the benefit of plaintiff. A trial of the cause resulted in a verdict and judgment for plaintiff in the sum demanded. The defendant has appealed.

The plaintiff's evidence tends to show that in 1927 he was a brakeman on the extra list of the Missouri Pacific Railroad Company; that in March, 1928, while he was working for the Sheffield Steel Corporation in Kansas City, Missouri, a doctor and a nurse, employees of said corporation, after examining him directed that he go to Dr. Small for examination of his eyes; that on March 8, 1928, his eyes were examined by Dr. Small who advised him not to work "against that

hot fire'' and directed that he go to another doctor for a blood test; that none of the doctors questioned the acuity of his eyes; that in the late spring of 1930 while performing his duties as a brakeman a hot cinder escaped into his right eye; that the injury .was treated by a doctor and a bandage placed over plaintiff's right eye; that when he returned to his place of work he discovered for the first time that the sight of his .left eye was affected and that thereafter the condition ''gradually grew worse;'' that in October, 1931, he furnished proof to the defendant that he had lost the sight of his left eye and that the loss was permanent.   The defendant, in March, 1932, wrote a letter to the plaintiff stating that it had canceled his certificate and enclosed a check for $228.25 in payment of the beneficiary assessments remitted by the plaintiff.   The tender was refused.

Dr. Small, plaintiff's witness, said that he examined plaintiff's eyes on March 8, 1928, found in plaintiff's left eye a condition of disseminated choroditis, a progressive and incurable disease.   Dr. Small based his testimony mainly upon his office record made at the time of the examination and upon the report of his finding made to his employer, Sheffield Steel Corporation.   Plaintiff was not aware of the fact that either the record or report was made. Dr. Small did not advise plaintiff of the condition which he found in his left eye.

During the cross-examination of plaintiff the defendant introduced its constitution.   Section 58 thereof provided that the defendant would establish a beneficiary fund;   that in order to maintain said fund it would levy assessments monthly upon each beneficiary member, as follows:   ''Upon each Class G $5000 certificate $5.85;'' that when the fund ''falls below the amount of $4,000,000 the general secretary and treasurer shall levy an extra assessment equal in amount to the regular monthly assessment levied upon all beneficiary members, and shall continue such extra assessments monthly until the amount of $4,000,000 has been reached and remains in the beneficiary fund.''

The defendant introduced the certificate, copy of the application and medical examination made by the defendant's medical examiner at the time the application was signed.   The report of defendant's medical examiner stated that he had examined plaintiff; that plaintiff's sight and hearing were normal and that he considered plaintiff a good risk.   Plaintiff introduced receipts executed by the defendant showing that plaintiff had paid all assessments and dues to and including the assessment and dues for the month of December, 1931.

The defendant's evidence was to the effect that plaintiff's left eye was diseased as early as March, 1928;   that the disease was permanent, progressive and incurable and that plaintiff was advised prior to the

making of the application that his left eye was diseased. The defendant's evidence further tended to show that it was a voluntary fraternal benefit society organized under the laws of Ohio and that it was a fraternal benefit society as defined in section 5990, Revised Statutes, Missouri 1929, and that it limited its membership to one hazardous occupation, namely, to those whose occupation was that of "railroad trainmen." It is conceded by the defendant that it had not prior to the trial obtained a license from the superintendent of insurance in Missouri, authorizing it to transact business in this State.

It is the plaintiff's theory that the general insurance laws of Missouri apply for the following reasons: (1) That defendant did not comply with the provisions of section 6005, Revised Statutes 1929; (2) that the certificate is not one of the kind authorized by section 5997, Revised Statutes 1929, and (3) that the certificate provided for a stipulated premium and for payment of benefit from a $4,000,000 beneficiary fund. Reliance for this contention is based mainly upon the following authorities: Ragsdale v. Grand Lodge Brotherhood of Railroad Trainmen, 80 S. W. 272; O'Neal v. Grand Lodge Brotherhood of Railroad Trainmen, 261 S. W. 128. The certificate involved in each of those cases was executed prior to the enactment of the statute, now section 6021, Revised Statutes 1929, and therefore do not aid us in determining whether or not the defendant in the present action comes within the exemption provided in the last mentioned statute.

In the case of Clark v. Grand Lodge of Brotherhood of Railroad Trainmen, 43 S. W. (2d) 404, the Supreme Court said: "Section 6021, Revised Statutes 1929, also a part of said Article 13, governing and imposing certain requirements on fraternal benefit societies, provides that 'nothing contained in this article shall be construed to affect or apply to . . . societies which limit their membership to any one hazardous occupation,' and further that 'no society, which is exempt by the provisions of this section from the requirements of this article (fraternal insurance) shall give or allow or promise to give or allow, to any person any compensation for procuring new members.' The defendant association clearly comes within the exemption provisions of this statute." The appeal in the Clark case was from a judgment entered upon the sustention of the defendant's demurrer to the petition upon the ground that defendant was not a suable entity. The statements in the opinion concerning the allegations of the petition do not snow that the construction of section 6021 was involved in the action.

In case of Ruggles v. International Assn. of Bridge, Structural and Ornamental Iron Workers, 52 S. W. (2d) 860, the Supreme Court, in speaking of the Clark case, said: "The petition in that case set

out the terms of the policy, the constitution and by-laws of the order and other facts showing that the order was doing an extensive insurance business as an insurance association similar to that authorized by our statutes to be done by fraternal beneficiary associations. . . .'' Thus, it appears that we cannot say that the construction of section 6021, supra, was not involved in the Clark case. Accordingly, we hold that the evidence in the instant case was sufficient to show that defendant was a fraternal benefit society and that it was not required to have a license to transact business in Missouri. provided it limited its membership to one hazardous occupation. And if no license were required then the provisions of section 5997, supra, do not govern the terms and conditions of the certificate which the defendant executed to the plaintiff, for the reason that nothing contained in sections 5990-6029 Revised Statutes 1929, ''shall be construed to affect or apply to'' the defendant. Hence, the answers in the application were warranties and not mere representations.

Plaintiff in submitting to physical examination by physicians did not in the circumstances shown consult a physician within the meaning of the question lettered ''A'' [45 C. J. 85; Winn v. Modern Woodmen of America, 137 S. W. 292.]

The evidence as to whether the answer to the question lettered ''F'' was true or false was conflicting. According to plaintiff he did not observe that the vision in his left eye was impaired until about one year after the certificate became effective, nor had the acuity of his eyes been questioned prior to that time. If in March, 1928, plaintiff's left eye was diseased, as the defendant contends, then the jury could find that plaintiff prior to the making of the contract knew that the vision in his left eye was seriously impaired. Therefore, the evidence of plaintiff to the effect that about one year after the execution of the certificate he, for the first time, observed that the vision in his left eye was defective, contradicted the evidence of Dr. Small and the medical evidence of the defendant.

The defendant's evidence further tends to show that in March, 1928, plaintiff's left eye was diseased; that the disease was permanent, progressive and incurable, and that the plaintiff was advised of that fact. But we must not overlook the testimony of the defendant's witness, the medical examiner who examined plaintiff on December 12, 1928. The sum of his evidence was that plaintiff's sight and hearing, as well as other physical conditions, were normal and that he considered him a good risk. All of these facts plainly appear in the report of the medical examiner which was a part of the contract in suit. This was substantial evidence that plaintiff's left eye was not diseased or the vision thereof impaired at the time the application was signed. The question as to whether the answer to the question lettered ''F'' was true or false was one for the jury.

Plaintiff's Instruction No. 1 allowed a verdict in his favor upon the jury finding, aside from questions not in controversy, "that before August, 1931, plaintiff lost the sight of his left eye so that such loss was and is complete and permanent . . . unless you further find from the evidence that plaintiff fraudulently misrepresented facts material to the risk in his application and facts which were known by plaintiff to be false as set out in further instruction." Plaintiff was not entitled to recover unless he lost the sight of his left eye subsequent to the effective date of the contract of insurance. The evidence of both parties shows that the loss of vision in plaintiff's left eye was caused by disease. If the diseased condition existed at the time the application was made and the acuity of plaintiff's left eye had been questioned then plaintiff was not entitled to recover even though he believed that his answer to the question lettered "F" was true. This for the reason that the answer was a warranty. The instruction was erroneous.

Plaintiff's Instruction No. 2 told the jury that if the defendant after acquiring knowledge of the facts concerning plaintiff's claim did not tender all of the premiums "then and in that event you are instructed that defendant has waived its right to rely upon misrepresentations, if any, made in the application for said policy and defendant is estopped from asserting misrepresentations as a defense to this action." It seems to be conceded that plaintiff remitted beneficiary assessments in the amount of $288.25 and that in addition thereto he paid special assessments varying in amounts from 80c to $1.50 per month. There was no evidence showing that the special assessments were paid into the beneficiary fund. Under the facts in this case the defendant could not defeat plaintiff's action unless it timely tendered all beneficiary assessments remitted by plaintiff. It may reasonably be inferred that at the trial plaintiff did not claim that the special assessments were paid into the beneficiary fund. The instruction was misleading.

It was not proper in argument to refer to the failure of the defendant to produce the records of the Missouri Pacific Railroad Company. The records were equally available to both parties.

The plaintiff was permitted to testify over the objection of defendant that in the year 1927 and at other times prior thereto he was examined by physicians in the employ of the Missouri Pacific Railroad Company and that he passed those examinations. This evidence was too remote. It did not tend to show that a diseased condition did not exist in plaintiff's left eye in December, 1928. Plaintiff was also permitted to say in effect that the question lettered "F" was not read to him. The application was a part of the contract of insurance, hence, plaintiff was conclusively bound by the answer as written in the application.

What we have said disposes of the defendant's contentions in respect to its requested instructions which were refused. The judgment is reversed and the cause remanded. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur.