### W. O. W. LIFE INS. SOC. v. DICKSON et al.

#### No. 1921.

Court of Civil Appeals of Texas. Eastland.
Oct. 6, 1939.

Rehearing Denied Nov. 24, 1939.

244

Turner, Seaberry & Springer, of Eastland, for appellant.

Collie Bros. and Frank Sparks, all of Eastland, for appellees.

PONDER, Special Justice.

Appellees recovered judgment against appellant, Woodmen of the World Life Insurance Society, on a $1,000 fraternal benefit certificate issued by appellant, without medical examination, to Veo Lee Roy Dickson; the appellee intervener, Higginbotham Bros. & Company, recovering $177.50 upon a partial assignment of said certificate covering funeral expenses, and appellee beneficiary, the widow, Mrs. Agnes D. Dickson, recovering the $882.50 balance of the certificate, plus $120 statutory penalty and $250 attorney's fees. Trial was by jury on special issues.

Appellant specially pleaded in defense that when the application was executed, on November 29, 1935, the certificate issued on December 26, 1935, and delivered to insured on January 4, 1936, the deceased was not then in sound bodily health and not in good health, but that at said times he was suffering from "tuberculosis, Bright's disease, nephritis, heart trouble, valvular endocarditis, and other complications", each and all of which tended to shorten his life, and that such alleged facts constituted breaches of warranty, which, under the express provisions of the application, certificate and Constitution and By-Laws of appellant, rendered the certificate null and void.

Appellant further specially pleaded that the deceased, in answers to the following questions under "Personal History" in his application, made false negative answers thereto, as follows:

"3. Has any change of climate or occupation ever been made or advised for the benefit of your health?

"Answer: 'No.'

"4. Has your weight in the last two years increased or decreased?

"Answer: 'No.'

"7. Have you within the past five years suffered any mental or bodily disease or infirmity?

"Answer: 'No.'

"8. Have you within the past five years consulted or been attended by a physician for any disease or injury or undergone any surgical operation?

"Answer: 'No.'

"9. Have you had in the last ten years any disease or injury other than those above mentioned?

"Answer: 'No.'

"10. Have you fully recovered from any and all the diseases or conditions referred to above?

"Answer: 'No illness.'

"11. Are you now in good health?

"Answer: 'Good.'"

Further, that said false answers constituted breaches of warranty, in that: "Prior to the date of his said application on November 29, 1935, a change of climate and occupation had been advised for the benefit of Dickson's health; during the preceding two years before the date of said application his weight had decreased; during the preceding five years prior to the application, he had suffered from a bodily disease, to-wit: tuberculosis, Bright's disease, and heart trouble; during the preceding five years prior to said application, he had consulted and been attended by a physician for tuberculosis, Bright's disease, and heart trouble; during the ten years preceding said application, he had suffered a disease in the form of tuberculosis, Bright's disease, and heart trouble; prior to said application he had suffered an illness in the form of tuberculosis, Bright's disease, and heart trouble, and on November 29, 1935, he was not then in good health."

Issues on all of the alleged breaches of warranty were submitted to the jury and were answered adversely to appellant, with

the exception of the one involving answer to Question No. 8 which was submitted in Special Issues Nos. 15 and 16, and which we will later discuss.

Appellant's First Assignment and Proposition complains of the error of the court in overruling its motion for instructed verdict, notwithstanding that the issues as above stated were found adversely. However, if there was evidence of probative force to support the jury findings, then they must stand.

The record discloses a conflict of evidence. Dr. M. L. Stubblefield testified that he had examined the deceased during 1935, prior to the date of the application, and had found him suffering from tuberculosis, Bright's disease, and heart trouble, and had advised deceased to go to the State Hospital at Sanatorium, and had written prescriptions for him. Appellee Mrs. Dickson denied that her husband had consulted or been treated by Dr. Stubblefield in 1935, but that such occurrences were in 1936. The testimony of Walter B. May, a druggist, tended to fix the time of Dr. Stubblefield's consultations, prescriptions, and treatment of deceased in 1936, rather than 1935, and that he found no prescriptions for 1935. Dr. P. M. Kuykendall testified that he examined the deceased on August 29, 1936, and found him to be suffering from tuberculosis, Bright's disease, and heart trouble, and that deceased was not in good health and had had tuberculosis "at least a year or better." Dr. Ed Blackwell testified that he examined the deceased about the 1st of September, 1935, for tuberculosis and heart trouble and that he did not find any evidence of tuberculosis or heart trouble. Appellee Mrs. Dickson and several lay witnesses testified that they had observed deceased in his daily life and that he was, or appeared to be, in good health; that he looked healthy, and continued his work up to January 4, 1936, when the certificate in question was delivered to him.

■ Under the conflicting testimony we cannot say, as a matter of law, that the deceased on the dates in question suffered from any of the diseases alleged or that he had consulted or been treated by a physician prior thereto. The jury in its province may have concluded that Dr. Stubblefield was mistaken in his dates, or have given weight to the testimony of Mrs. Dickson and other lay witnesses, which was admissible. General Life Insurance Co. v. Potter, Tex.Civ.App., 124 S.W. 2d 409, and cases there cited; American National Insurance Co. v. McKellar, Tex. Civ.App., 295 S.W. 628; Vann v. National Life & Accident Insurance Co., Tex.Com. App., 24 S.W.2d 347.

■ Even though we should be of the opinion that the clear preponderance of the evidence was in favor of the appellant on these issues, this case should be reversed and remanded, rather than rendered as insisted by appellant; Wininger v. Fort Worth & Denver City Ry. Co., 105 Tex. 56, 143 S.W. 1150; Manning v. Ry. Co., 107 Tex. 546, 181 S.W. 687; Davidson v. Pyle, 103 Tex. 209, 124 S.W. 616, 125 S. W. 881; and since we find it necessary to reverse and remand this case on other grounds, we express no opinion as to such preponderance.

Appellant, in support of its position that the court erred in overruling its motion for an instructed verdict, both in its brief and in oral argument, urged that breach of warranty as to questions and answers Nos. 7, 8 and 9 was shown by the testimony of appellee Mrs. Dickson, in that her husband had the "flu" in the Fall of 1928, and was attended by Dr. Bachelor in Oklahoma; that Dr. Blackwell removed the tonsils of deceased in 1932 or 1933, about three years before he joined the Woodmen and that deceased spent one night in the hospital after the operation; and that he went to see a doctor in Ranger for his kidneys.

■ We find no pleadings of appellant to support these defenses, its pleadings being confined or limited to tuberculosis, Bright's disease, heart trouble, and "other complications." A breach of warranty based on such defenses must have been specially pleaded by appellant. Knights and Ladies v. Russell, Tex.Civ.App., 209 S.W. 756; Sovereign Camp, W. O. W., v. Hubbard, Tex.Civ.App., 248 S.W. 732.

An examination of the authorities cited by appellant as requiring a reversal and rendition of this case will disclose that the evidence in these cases was undisputed and hence inapplicable under the record of this case. We overrule appellant's first assignment and proposition.

Appellant's third assignment and proposition are substantially that W. B. May, a druggist, having been called as a witness for appellee and having testified that deceased was sick in 1935 or 1936, "I forgot.

what date that was", and that he did not think he filled any prescriptions for deceased in 1935, and did not find any in his files, and having been cross examined in detail with reference to a written statement signed by him on October 30, 1936, which tended to contradict his testimony on the trial, the court erred in excluding said statement and in refusing to permit appellant to introduce the same in evidence. We sustain this assignment.

In view of the testimony of Dr. Stubblefield that he had treated and prescribed for the deceased prior to the date of the application, its issuance, and delivery on January 4, 1936, and that deceased was suffering from certain diseases and ailments prior to those dates, the testimony of Mr. May was very material on those issues.

The excluded statement, appellant's exhibit No. 6, a photostatic copy of which is a part of the statement of facts, reads:

"Confirmation of Interview

| | |
|---|---|
| My name is Walter B. May | Defendant's Exhibit—No. 6, Cause |
| My home address is Desdemona, Tex. | No. 17,019, Bess C. Terrell, Court |
| I am ·at present employed by self— druggist | Reporter, 91st District Court, Eastland County, |
| Business address— Desdemona | Texas. |

I can always be found by writing to my ⸳ address

Date Oct. 30, 1936.

I had known Veo L. Dickson for three years. He had lived here in Desdemona that length of time. Mr. Dickson did mechanic work when he first came here. He was not very successful. The spring of 1935 he was on the Welfare for awhile. During about March, 1935, Mr. Dickson came to me complaining of nervousness, nausea and insomnia. I sent him to Dr. Stubblefield for treatments. After he first saw the Dr. he seemed some better, and he drove the school bus all winter. In March, 1936, he had the Chicken Pox. This left him weak and he gradually grew worse. He died October 19, 1936. I have fixed a number of prescriptions for the deceased, starting the latter part of 1935 and up until his death. Some were for kidney trouble, some for stomach trouble, and for heart trouble.

Walter B. May

Witness: Howell P. Clark."

Mr. May, on direct examination, testified that on November 29, 1935, and on January 4, 1936, deceased was, and seemed to be, in good health, and further testified: "He had a little spell of sickness in 1935 or 1936, and I forget what date that was.

"Q. Did you ever fill any prescriptions for Mr. Dickson in 1935 at all, Mr. May? A. I don't think so.

"Q. Do you remember ever calling Dr. Stubblefield for Mr. Dickson, for any prescription for him? A. Yes, a time or two.

"Q. Was that in 1934 or 1936? A. 1936 is the only time I called him.

"Q. Do you remember about what month that was? A. No, I don't."

Counsel for appellant in laying a predicate for impeachment, after the witness had admitted signing the statement, asked him, among other things:

"Did you make this statement: 'During about March, 1935, Mr. Dickson came to me, complaining of nervousness, nausea and insomnia?' A. I believe the dates are wrong, I think the other is all right, but I don't recall that is the date.

"Q. That is the statement you made in here, isn't it? 'I sent him to Dr. Stubblefield for treatment?' A. I sent him to Gorman.

"Q. And you made that statement? A. Yes sir.

"Q. When did you send him to Dr. Stubblefield? A. I don't remember just when it was, sometime along the first of the year.

⸳ "Q. What year? A. 1936, that is the way I have got it in my mind.

"Q. 'I have fixed a number of prescriptions for the deceased'—you made that statement? A. Yes.

"Q. How many would you say there were? I think seven, eight, or nine, I don't remember exactly.

"Q. Starting the latter part of 1935 and up until his death, is that right? A. Well, you have got that down there, but I think he got the dates wrong.

⸳ "Q. You think it should be the latter part of what year? A. 1936.

"Q. And· up until his death? A. Yes, sir.

"Q. 'Some were for kidney trouble, some for stomach trouble, and for heart trouble' is that right? A. I filled one for heart trouble.

"Q. Just answer the question whether you made that statement or not? A. If that is written down there like that now, I didn't.

248

"Q. You did sign it? A. That is my signature there."

Appellant offered the statement in evidence identified as its exhibit No. 6, which was objected to, objection sustained, and exception taken. We think that the matters under inquiry were material and that a sufficient predicate had been laid for the admissibility of Mr. May's signed statement for impeachment purposes and that the court erred in sustaining appellees' objection and in excluding the statement. 45 T.J. sec. 274, p. 148; sec. 280, p. 155; sec. 281, p. 157; sec. 284, p. 160; Gulf, C. & S. F. Ry. Co. v. Matthews, 100 Tex. 63, 71, 93 S.W. 1068; Bradley v. T. & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861.

Since the second, sixth, and forty-first assignments and propositions are so closely related, we will consider them together.

Appellant, in its second proposition, complains of the action of the court in overruling its motion for judgment on the verdict, because the jury found that within five years prior to November 29, 1935, the deceased had consulted a physician for tuberculosis, which was contrary to his answer to Question No. 8 in the application.

Appellant, in its forty-first proposition, asserts that the insured having warranted in his application (answer to Question No. 8) that he had not consulted a physician within five years prior to his application, and the jury having found in answer to special issue No. 15 that he did consult a physician for tuberculosis within said time, the court erred in rendering judgment against it.

Appellant, in its sixth proposition, complains that the court submitted to the jury special issue No. 16 which reads:

"If you have answered the next preceding special issue 'yes' then answer this question:

" 'Do you find from a preponderance of the evidence that such consultation, if any, was not for the purpose of ascertaining the physical fitness of Veo L. R. Dickson for employment as a bus driver?'

"You will answer 'Such consultation was not for such purpose', or 'Such consultation was for such purpose' as you find from the preponderance of the evidence"; to which the jury answered: "Such consultation was for such purpose."

Appellant asserts three distinct grounds of complaint to this issue, namely: (1) that the purpose of the consultation with a physician is immaterial; (2) that the issue was not supported by the pleadings; and (3) that the burden of proof was misplaced. We hold that the second and third grounds are good. The record does not disclose any pleadings to support the issue as submitted and, if relied upon by the appellees, should have been pleaded, and, if pleaded, the burden of proof would have been upon appellees. As to the first ground, we cannot agree that in all cases the purpose of a consultation with a physician would be immaterial in testing the falsity of a negative answer to such a question as No. 8 in the application for a certificate of insurance in such association as appellant. We realize that some of our Courts of Civil Appeals have held that the answers in the application for such type of insurance certificate must be literally true. Sovereign Camp, W. O. W., v. Rodriquez, Tex.Civ.App., 125 S.W.2d 1069, writ of error granted; Sovereign Camp, W. O. W., v. Mendez, Tex.Civ.App., 123 S.W.2d 985; Modern Woodmen of America v. Owens, 60 Tex.Civ.App. 398, 130 S.W. 858.

We do not hold that untrue representation must be material, but so far as here pertinent, question No. 8 in the application inquired as to whether or not the applicant (deceased) had " * * * within the past five years consulted or been attended by a physician for any disease or injury * * *." A finding by the jury that the applicant, within the period inquired about, had consulted a physician for the purpose of obtaining a health certificate so that he might obtain a job as a school bus driver (Issues 15 and 16 and answers thereto) does not constitute conclusively and as a matter of law a finding that applicant "had consulted a physician for any disease" and to sustain appellant's contention would necessitate our so holding.

We think that a reasonable construction should be placed upon such a question as viewed from the layman's point of view and that it should be read in its plain, ordinary, and natural signification and should not be so construed as to lead to an absurdity or to defeat justice and right and, therefore, in our opinion a routine examination which discloses no disease or injury or which does not require treatment for any disease or injury should not as a matter of law be regarded as a consultation with a physician "for any

disease or injury." We believe that such reasonable construction is borne out by the following cases: The Homesteaders v. Stapp, Tex.Civ.App., 205 S.W. 743; Winn v. Modern Woodmen of America, 157 Mo. App. 1, 137 S.W. 292; Elliott v. Grand Lodge Brotherhood of Railway Trainmen, 231 Mo.App. 49, 95 S.W.2d 829; 45 C.J. 85; National Americans v. Ritch, 121 Ark. 185, 180 S.W. 488.

Since issue No. 15 was submitted in conjunction with issue No. 16 to which the jury answered that such consultation was for the purpose of ascertaining the physical fitness of deceased for employment as a bus driver and since the jury was instructed that if they had answered issue No. 15 "yes", then they would answer issue No. 16, whereby their answer to one may have influenced the other, we cannot consider it proper to ignore issue No. 16 and its answer and to make disposition of the case solely on issue No. 15 and its answer; and, therefore, in the interest of justice, we consider it proper to reverse and remand the case.

The argument of counsel complained of in appellant's fourth, fourteenth, fifteenth and sixteenth assignments will probably not occur on another trial.

Appellant's fifth assignment and proposition complained of the court's overruling of its objection to the introduction of an unverified, unsigned report of the Harper-Holmes Bureau, dated November 28, 1935, stating that the informant had not learned of any illness of deceased and that he apparently enjoyed good health. As an ex parte declaration, it was inadmissible to prove the truth of the statements therein contained. Appellees, under their sixth counter proposition, argue that the report showed that appellant did not rely upon the warranties in the application, but waived them and made an independent investigation of its own. We find no pleadings to support appellees' position and, therefore, hold that the court erred in admitting the statement in evidence over the objection of appellant.

Appellant's seventh, eighth and ninth assignments and propositions, complaining of the court's refusal to submit requested issues as to whether on the date of the application, the date of the certificate, and of its delivery, the deceased was "suffering from any disease that would tend to shorten his life", are overruled, because the court submitted, and the jury

answered against appellant, issues submitting the question as to the diseases pleaded by it.

We overrule all other assignments complaining of the failure of the court to submit requested issues, for the reason that all defenses pleaded by appellant were submitted by the court.

In view of what has been said and of the disposition we are making of this case, we think it unnecessary to discuss the other assignments, which are here overruled.

LESLIE, C. J., and FUNDERBURK, disqualified and not sitting.